Argued May 1, affirmed July 19, 1967

HUDSPETH ET AL, *Appellants, v.* EASTERN
OREGON LAND COMPANY, *Respondent.*

430 P. 2d 353

*James F. Bodie,* Prineville, argued the cause for appellants. With him on the briefs were Anne Mac-Donald and Bodie, Minturn & Glantz, Prineville, and Roy Kilpatrick, Canyon City.

*Robert B. Conklin,* Portland, argued the cause for respondent. With him on the brief were Alfred C. Veazie and Hart, Veazie, Bischoff & Hanlon, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING and FORT, Justices.

O'CONNELL, J.

This is a suit for a declaratory decree to obtain the construction of a deed executed by defendant to

plaintiffs' predecessor in interest. Plaintiffs appeal from a decree in favor of defendant.

Defendant conveyed one parcel of land to Blue Mountain Land Company and another parcel to Blue Mountain Mills, a partnership. Thereafter, Blue Mountain Mills conveyed its parcel to Blue Mountain Land Company, which conveyed both parcels to plaintiffs.

Each of the original deeds from defendant to Blue Mountain Land Company and Blue Mountain Mills respectively contained the following clauses:

"Reserving forever from this conveyance unto the grantor herein, its successors and assigns, all minerals, including metals, coal, gas, oil and other valuable deposits of minerals of whatever nature, and salt or saline springs, and springs of any nature except water, which are now known to exist or which may hereafter be discovered in or upon the said lands, or any part thereof, together with the right to enter upon said lands, or any part thereof, at any time, to prospect or explore for, develop and remove such minerals, and to develop and utilize such springs and the products thereof, and for said purposes to use all surface ground necessary or convenient therefor; * * *

"In the event the grantee shall convey all or any portion of such lands to the United States of America, and the statutes of the United States or the regulations or orders of the Department of Agriculture, the Department of the Interior, or any other Department, Bureau or Agency having the duty or power to fix and determine the terms and conditions under which such conveyance shall be received by the United States, shall prohibit or prevent the acceptance of conveyance of said lands or any part thereof, with the foregoing reservation of minerals, then the foregoing reservation shall be void and of no effect to the extent that said reservation may be inconsistent with such laws,

regulations or orders; but to the fullest extent allowable under such rules, regulations and orders, the grantor and its assigns shall retain the rights herein reserved."

Plaintiffs submitted a proposal to the United States Forest Service for an exchange of the parcels acquired from defendant for United States government lands. In a decision by the Regional Forester, the proposed exchange was found unacceptable unless defendant's mineral reservation could be limited in certain respects. Plaintiffs demanded that defendant agree to the proposed revision and defendant refused, whereupon plaintiffs brought this suit for declaratory relief.

■ The question on appeal is whether the provision in the deed from defendant to plaintiffs' predecessors in interest waiving defendant's mineral rights under the circumstances described inures to plaintiffs. Plaintiffs contend that the provision in the defendant's deed was a covenant the benefit of which ran with the land to plaintiffs.

The benefit of a promise will run with the land only if (1) the promise is one which relates to the use of the land, and (2) the original parties to the promise intended that the promise should run.

The first of these requirements is more specifically stated in Restatement of Property, Servitudes § 543, p. 3254 (1944), as follows:

"(1) The benefit of a promise can run with land only if it is a promise respecting the use of land of the beneficiary of the promise.

"(2) A promise is a promise respecting the use of land of the beneficiary of the promise if and only if the performance of the promise will

"(a) constitute an advantage in a physical sense to the beneficiary in the use of his land, or

"(b) decrease the commercial competition in his use of it, or

"(c) constitute a return to the beneficiary of the promise for a use of it by the promisor."

The second requirement for the running of real covenants is stated in Restatement of Property, Servitudes § 544, p. 3260 (1944), as follows:

"The benefit of a promise respecting the use of land of the beneficiary of the promise runs with the land only in so far as it was intended by the parties to the promise that it should run."

■ Neither of the foregoing requirements is satisfied in the present case. However, we prefer to rest our decision upon the ground that the second requirement was not met. We find nothing in the deed or in the nature of the promise from which it can be inferred that the original parties intended the benefit to run or that plaintiffs could reasonably expect it to pass to them upon their acquisition of the land. In fact, the language of the deed itself suggests the opposite conclusion. In addition to the reservation of minerals, the deed contained a reservation of a logging road right of way in the following language:

"And also reserving to and for the grantor, its successors and assigns, all necessary and convenient rights-of-way for such logging truck roads and branches and extensions thereof as the grantor may at any time desire to construct or use for the removal of any timber on lands described in the contract dated October 9, 1944, between the Grantor as Seller and J. D. Welch, Jr., and others, partners as Blue Mountain Mills, Purchasers; including the right to use any roads constructed or caused to be constructed by said grantee or said partnership upon the lands covered by said contract.

"In the event the grantee herein, *its successors or assigns,* shall convey said lands to the United States, said rights-of-way shall be subject to such limitations in point of time, and such regulations and restrictions as to method of use as may be required by law or the general orders or regulations of the Department or Agency of the United States having jurisdiction over the acquisition of such lands by the United States." (Emphasis supplied.)

The inclusion of the words "its successors or assigns" in the reservation of the right of way and the absence of similar language in the reservation of minerals strongly supports the inference that the original parties to the deed did not intend the limitation on the latter reservation to be operative in favor of the promisee's successor.

■ We have treated the provision in question as containing a promise made by defendant. Even if we were to treat the reservation of minerals as creating in defendant by reservation an easement on a special limitation calling for a termination of the easement upon the refusal of the governmental agency to accept the encumbered land, plaintiffs would not be entitled to recover because we construe the limitation as operative only if the original promisee attempted to convey to the government. By the terms of the deed the limitation applies only "[i]n the event the *grantee* shall convey." (Emphasis supplied.) Thus the limitation is subject to the same construction as that which we have applied in treating the reservation clause as containing defendant's promise.

As we previously observed, the promise in the present case does not satisfy the requirement set out in Restatement of Property § 543, which states in effect that the benefit of a promise can run with the land only if "the performance of the promise will con-

stitute an advantage in a physical sense to the beneficiary in the use of his land."

We have refrained from resting our decision on the ground that the promise in question does not meet the requirement stated in § 543 because we entertain a grave doubt as to the validity of the requirement. Our doubt springs from the following considerations.

██ There is nothing in the nature of things which requires the conclusion that the benefit of a covenant is not capable of running with the land unless the performance of the promise will constitute an advantage in a physical sense to the promisee in the use of his land. Both the burden and the benefit of promises in leases have been held to run to the successor of the lessee or the lessor in cases where the promise was not related to the physical use of the land.[1] And certain covenants of title which have no direct relation to the physical use of the land freely run with the land.[2]

---

[1] Abbott v. Bob's U-Drive, 222 Or 147, 352 P2d 598, 81 ALR2d 793 (1960) (burden of a covenant to arbitrate contained in a lease); The Texas Co. v. Butler, 198 Or 368, 256 P2d 259 (1953) (option to purchase contained in a lease); Richardson v. Callahan, 213 Cal 683, 3 P2d 927 (1931) (covenants to insure, deliver up possession, renew lease, exercise option to purchase, restrict alienation, to keep premises free from liens, contained in an oil and gas lease); Miller & Lux v. San Joaquin Agr. Co., 58 Cal App 753, 209 P 592 (1922) (covenant to share expenses of litigation); Salisbury v. Shirley, 66 Cal 223, 5 P 104 (1884) (covenant to pay taxes); Frumkes v. Boyer, 101 So2d 387 (Fla 1958) (covenant to dedicate strip of land adjoining land conveyed); Hirschberg v. Russell, 317 Ill App 329, 45 NE2d 886 (1943) (covenant creating power to terminate lease on notice in event of sale); Kew v. Trainor, 150 Ill 150, 37 NE 223 (1894) (covenant against subletting); Testa v. Lally, 161 Pa Super 478, 55 A2d 552 (1947) (covenant giving lessor power of confession of judgment as running with the land); Floro Realty & Inv. Co. v. Steem Electric Corp., 128 F2d 338 (8th Cir 1942) (covenant to return security deposit); Clegg v. Hands, 44 Ch Div 503 (1890) (covenant to buy all beer and wine from lessor).

[2] 3 American Law of Property § 12.131 (Casner ed. 1952); 6 Powell on Real Property § 911, p. 265 (1965).

The Introductory Note to Part III of the Restatement of Property, Servitudes, p. 3153 (1944) teaches us that the law of covenants running with the land developed as a result of the effort to circumvent the common law rule inhibiting the assignment of choses in action. Apparently, promises respecting the *use* of land developed as an analogy to easements which, from an early date, had been held to pass with the land both as to benefit and burden. For other reasons, covenants of title and covenants in leases were recognized as enforceable by the successor of the promises.

■ We can think of no valid reason for confining the running of the benefit of promises to those which fit only within the analogy to easements. The stricture thus imposed by an historical circumstance should not be controlling today if there are valid reasons for adopting a broader test. As we have already noted, the benefit of promises in leases and the benefit of certain covenants of title will run with the land even though they do not relate to the physical use of the land. There is as much reason to apply the same principle when the promise contained in a deed does not fit either of the foregoing categories. It would seem enough for the benefit of a promise to run that the promise relate to the land and that the original parties to the promise intended the promise to run with the land.[9]

■ The intention of the original parties may be derived from the language used in the instrument or from the fact that the undertaking is one which because of business practice, custom, or the common understanding of the community is deemed to have been intended to benefit those who succeed to the promisee's land.

The decree of the trial court is affirmed.

[9] See cases cited in note 1 supra.