Argued and submitted September 15, 1970, reversed
May 12, 1971

# UPDEGRAVE et ux, *Appellants, v.*
# AGEE et ux, *Respondents.*

484 P2d 821

*Paul E. Geddes*, Roseburg, argued the cause for appellants. With him on the briefs were Geddes, Felker, Walton & Richmond, Roseburg.

*Randolph Slocum*, Roseburg, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, and DENECKE, TONGUE and HOWELL, Justices.

HOWELL, J.

Plaintiffs filed a suit to enjoin the defendants from using a private road across plaintiffs' property. The defendants filed a cross complaint seeking to enjoin the plaintiffs from interfering or obstructing defendants' use of the road. The trial court entered a decree in favor of defendants, and plaintiffs appeal.

The facts have been stipulated.

Prior to May, 1962, the land in question was owned by Robert G. Murray and Bette J. Murray, husband and wife, as tenants by the entireties. The land was bounded on the south by the North Umpqua river, on the east by land owned by W. H. Osborne, who is not involved in this litigation, on the west by a county road, and on the north by property of others also not involved herein.

A road, referred to as the "old road," ran from the county road on the west side across the Murray property to the Osborne property on the east side and constituted the only access by the Murrays and Osborne to the county road.

In 1962, the Murrays were divorced and Robert acquired an undivided 60% interest and Bette an undivided 40% interest in the entire tract as tenants in common. In 1964 Robert filed a partition suit against his former wife, and the suit was settled and the property divided by agreement of the parties. One of the terms of the agreement provided that Robert could construct a new road across the entire property from the county road on the west to the Osborne property on the east, and would grant Bette a right of way and easement over the new road. In June, 1964, Robert sold his portion of the property to the plaintiffs, who constructed the new road. Bette, now the wife of the defendant Charles Agee, continued to use the old road, and this litigation ensued.

The plaintiffs contend the agreement providing for the construction and use of the new road over plaintiffs' property to replace the old road is an agreement running with the land. The defendants argue that the agreement was personal between Robert and Bette Murray. To determine the intention of the parties it is necessary to consider the terms and provisions of the partition agreement.

The agreement divided the land into two parcels, with Robert receiving 1300 acres and Bette 200 acres. Robert received the westerly portion of the tract, and Bette's 200 acres, which included the home and most of the buildings, were located between Robert's parcel on the west and the Osborne property on the east; consequently, her only access to the county road was over Robert's property.

The entire Murray property had been encumbered by three mortgages, which Robert assumed and agreed to pay. The agreement provided that Robert

would make "all reasonable efforts" to have Bette's portion released from the mortgages. The agreement also stated that Robert, "his heirs, successors and assigns covenant and agree that, within five years from the date of these presents, a dwelling house will be constructed [upon Robert's property] and thereupon financing arrangements will be made to remove all encumbrances assumed hereby by [Robert] from that portion of the property deeded by virtue hereof to [Bette]."

The agreement further provided that Robert would pay Bette an additional $10,000 within three years, or upon the sale of Robert's portion of the property, whichever would occur the sooner.

Robert was required to build a fence according to certain detailed specifications and at his own expense between the two properties.

Paragraph 17 of the agreement stated that Robert may "move the present existing roadway" a distance of 300 feet north of the present roadway. Bette agreed to allow Robert access for ingress and egress over her property to construct the road. As soon as a determination was made of the location of the new road, Robert was required to grant Bette "a right of way and easement over and along the same." The right of way was to be 30 feet wide, and the road was to be constructed according to specific requirements as to roadbed, drainage, and the installation of culverts. The agreement also provided that Bette was to have use of the old road until the new road was completed.

The stipulation of facts states that when plaintiffs purchased Robert's land they knew of the terms of the partition agreement. Plaintiffs constructed the fence required by the agreement. Plaintiffs also con-

structed the new road in accordance with the specifications of the agreement, except that the defendants refused to allow plaintiffs to construct the new road over their property.

Upon completion of the new road the plaintiffs tendered an easement and right of way over the new road to defendants but they refused to accept it.

The parties have stipulated the plaintiffs' home is in the area adjacent to the old road, and defendants' use of the old road has created a dust condition and invades plaintiffs' privacy. The stipulation gives no reason why the defendants refuse to use the new road.

██ A covenant will be considered as one running with the land if (1) the promise is one which relates to the land, and (2) the original parties to the promise intended that the promise should run with the land. *Hudspeth v. Eastern Oregon Land Co.*, 247 Or 372, 430 P2d 353 (1967). Here, of course, the agreement for the construction and use of the new road relates not only to the land but also to the use of the land. The primary question, therefore, is whether the parties intended the agreement to run with the land or to be personal between Robert and Bette.

The partition agreement allowed Robert to "move" the old road and required him to grant Bette an easement over the new road. We believe that the language of the partition agreement contemplated that Bette's use of the old road should only be temporary, because the agreement provided that Bette was entitled to use the old road until the new one was completed.

We see no reason why the right to construct the new road should be personal to Robert any more than Bette's right to use the new road should be personal to her. All that Bette needed was a means of

ingress and egress over Robert's land to get to the county road. As plaintiffs argue, Bette's need is just as adequately met by use of the new road with the servient estate being owned by plaintiffs as it would be if Robert still owned the property. The change in ownership has not been a disadvantage to Bette, and apparently she does not contend that the new road is less convenient or serviceable compared to the old one.

Moreover, the partition agreement required Robert, "his heirs, successors or assigns" to construct a new home on the property within five years. If we accept the defendants' argument that the agreement to construct the new road was personal, it would result in an impractical situation. The plaintiffs herein, or Robert's heirs, if he died before constructing the home, would, under the agreement, be required to build the new house, and, after constructing a road to the new house to eliminate dust and maintain privacy, would still be burdened with Bette's use of the old road.

The primary thrust of the defendants' argument is that the agreement providing that Robert may move the old road does not include Robert's successors in interest, and that other portions of the partition agreement, including the obligation to build the house, bound Robert's successors in interest.

It is true that this court, speaking through O'CONNELL, J., in *Hudspeth v. Eastern Oregon Land Co., supra,* stated that the absence of the phrase, "successors or assigns," in a conveyance which reserved certain mineral rights, strongly supported an inference that the parties did not intend the particular covenant to run with the land. However, it is clear from the opinion that the presence or absence of the phrase

"successors or assigns" is but one element which may be considered in determining the intention of the parties.[1] Reading the partition agreement as a whole, we do not believe any particular intention can be attributed to the omission of the words "successors or assigns." As an example, the partition agreement bound Robert, without mention of his "successors or assigns," to acquire a survey of the lines and to build the fence between the two properties. Robert was required to assume the mortgages and to pay the $10,000 to Bette; the agreement to build the dwelling house and refinance "to remove all encumbrances" was binding on Robert, "his heirs, successors and assigns." The agreement also omits the words "heirs and assigns" when it refers to Bette's use of the old road and her use of the new road after it was constructed.

We also believe that the original parties and the plaintiffs herein, as laymen, would have believed that the right to move the old road and construct the new one would constitute a covenant running with the land. *See Abbott v. Bob's U-Drive et al,* 222 Or 147, 352 P2d 598, 81 ALR2d 793 (1960).

Reversed.

---

[1]The opinion also states:

"The intention of the original parties may be derived from the language used in the instrument or from the fact that the undertaking is one which because of business practice, custom, or the common understanding of the community is deemed to have been intended to benefit those who succeed to the promisee's land." 247 Or at 379.