492 P.2d 132

**FIRST WESTERN FIDELITY, a real estate investmeunt trust, Plaintiff and Appellant,**

v.

**GIBBONS AND REED COMPANY, a Utah corporation, Defendant and Respondent.**

No. 12353.

Supreme Court of Utah.

Dec. 20, 1971.

Lon Rodney Kump, of Richards, Bird & Kump, Salt Lake City, for plaintiff-appellant.

Bryce E. Roe, Salt Lake City, for defendant-respondent.

CROCKETT, Justice.

Plaintiff First Western Fidelity, real estate investment trust, sued Gibbons and Reed, a construction corporation, for alleged breach of an agreement to leave 19.5 acres of land in North Salt Lake properly contoured for residential subdivision purposes after removing sand, gravel and fill materials therefrom. Upon a trial the court found against the plaintiff on these three propositions: (a) that plaintiff had no rights in the agreement, which had been entered into with its predecessor in title; (b) that the defendant had not breached the contract; and (c) that

the plaintiff had failed to make any proper proof of damage. The latter appeals, assailing these findings.

■■ In addition to and supplementing the usual rule of review on appeal, that we survey the evidence in the light favorable to the trial court's findings, this further comment is applicable here. Where the appellant's position is that the trial court erred in refusing to make certain findings essential to its right to recover, and insists that the evidence compels such findings, it is obliged to show that there is credible and uncontradicted evidence which proves those contended facts with such certainty that all reasonable minds must so find. Conversely, if there is any reasonable basis, either in the evidence or from the lack of evidence upon which reasonable minds might conclude that they are not so convinced by a preponderance of the evidence, then the findings should not be overturned.[1]

On June 21, 1962, William and Mary Gibbs (hereafter called Gibbs), owners of 62 acres of land in North Salt Lake, entered into an agreement with defendant Gibbons and Reed, a construction company, giving the latter the right to remove sand, gravel and fill material from a 19.5-acre plot within Gibbs' land. This had the dual purpose of allowing defendant to obtain materials for its use and, as the contract stated, to make "the resulting ground . . . more acceptable for subdivision purposes." The contract further provided:

It is agreed that the land *will be contoured substantially as detailed on the contour map* Exhibit B, attached hereto. However, in the event that unforeseen conditions arise which make it prohibitive or uneconomical to complete the removal as detailed in Exhibit B, or if Grantee (Gibbons) is unable for any reason to remove all materials, the Grantee and the Grantor's engineers shall agree on and approve an alternate plan.

. . .

On June 27, 1962, Gibbs exchanged the 62 acres with Charles L. Wall for other lands owned by Wall. The pertinent terms of the subsequent exchange agreement read:

It is agreed that the trustees have executed an agreement with Gibbons & Reed Company for the removal of fill materials and for grading of certain portions of the land described in Exhibit "A" and that title will pass subject to said agreement which is attached hereto as Exhibit "B" and made a part hereof. The Company shall not be entitled to any monetary benefits accruing from the sale of material under said contract *but the benefits to the Company shall be limited to the grading and levelling accomplished thereby.*

---

1. Cf. statement in Martin v. Stevens, 121 Utah 484, 243 P.2d 747.

On September 10, 1962, plaintiff First Western purchased and took by warranty deed the entire 62-acre tract from said Charles L. Wall. Thereafter, during the remainder of 1962 and 1963 the defendant continued to remove sand and gravel from the 19.5 acres here in question. When the removal was completed in December of 1963, Mr. Gibbs met with representatives of the defendant on that ground and gave them directions about burying certain debris and boulders, which directions were complied with. A year later, in December 1964, plaintiff First Western notified defendant that it had failed to contour the land in accordance with its agreement with Gibbs. Dispute over this matter gave rise to this lawsuit in which the plaintiff claims diminution of the value of the land for subdivision purposes because of the alleged failure of the defendant to contour it according to the agreement.

The plaintiff does not claim that it was a party, nor in any way in privity, to the original contract which was between the defendant Gibbons and Reed and plaintiff's predecessor in title, the Gibbses. Its contention is that the provision therein that the land would be left contoured substantially in accordance with the attached map was "a covenant running with the land," and that it thus inured to the plaintiff's benefit through the agreement of Gibbs with Charles L. Wall and the latter's warranty deed to the plaintiff.

A covenant of the nature here involved can be regarded as one "running with the land," the benefit of which passes by deed or other conveyance to subsequent grantees, not parties to the original agreement, only if it meets two conditions: (a) that it would have some permanent effect of a physical nature upon the land itself affecting its usefulness and/or its value; and (b) that it appears either in the express words, or in the nature of the transaction and the covenant, that it was intended by the parties to run to subsequent transferees.[2]

Assuming for the moment that the first of such conditions would be met, the important question here relates to the second: the intent of the parties. In that regard it is to be observed that the language of these contracts hereinabove quoted leave something to be desired in clarity of expression as to whether the parties intended a covenant for a definite improvement of the land which was to inure to the benefit of subsequent transferees. The statement in the conveyance to plaintiff's predecessor, Wall, that:

. . . The company (Wall) shall not be entitled to any monetary benefits accruing from the sale of material under said contract but the benefits to the

2. See Restatement of Property, Servitudes, §§ 543 and 544, quoted and applied in Hudspeth v. Eastern Land Company, 247 Or. 372, 430 P.2d 353.

company *shall be limited* to the grading and leveling accomplished thereby . . . could well be understood as purposed primarily to reserve the monetary benefits of the contract to Gibbs, with the provision that "the benefits to the company [Wall] shall be *limited* to the grading and leveling accomplished thereby" being included to assure that Wall could claim no other advantage except that which resulted from whatever grading and leveling was done.

In view of the absence of a clear and definite expression in the contracts, it was proper for the trial court to take extraneous evidence and to look to the total circumstances to ascertain the intent.[3] He having done so and made his determination, under the rules hereinabove expressed, we can see no basis upon which this court could conclude that the evidence compels a finding that there was a covenant running with the land, nor for overturning the refusal to so find.

Correlated to and supportive of the foregoing are the further facts that when Mr. Gibbs, to whom the original covenant ran, met with representatives of the defendant Gibbons and Reed in December, 1963, on the ground, and the defendant complied with his directions about burying certain debris and boulders, Mr. Gibbs did not then, nor has he at any time, voiced any complaint that the property had not been contoured substantially as shown on the map. On the contrary, in his testimony at the trial he indicated that he was not dissatisfied with its condition. The plaintiff objected to this evidence on the ground that Mr. Gibbs, having parted with title, was not the proper person to acknowledge compliance with the covenant. This objection would have merit as to a true covenant running with the land. However, under the circumstances shown here, his testimony was competent as bearing upon whether the defendant had kept the original agreement with him.[4] That is the basis upon which it was admitted, and its credibility and the weight to be given it were for the trial court. For the same reasons hereinabove stated in sustaining the trial court's refusal to find a covenant running with the land, we also conclude that its refusal to find that the defendant had breached an agreement to contour the land should not be overturned.

The refusal to find for the plaintiff on the two issues above discussed being sustained, makes it unnecessary to be concerned with the contentions of the parties as to whether there was or was not proper and adequate proof of damages resulting

---

3.  See Continental Bank and Trust Company v. Stewart, 4 Utah 2d 228, 291 P.2d 890 and authorities therein cited.

4.  Iven v. Roder (Okl.), 431 P.2d 321; Ladley v. Saint Paul Fire and Marine Ins. Co., 73 Wash.2d 928, 442 P.2d 983; 29 Am.Jur.2d 299.

**6**

to the land for prospective subdivision purposes. (All emphasis added.)

Affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.