Argued May 8, reversed June 19, petition for rehearing
denied July 15, 1975

ERWIN ET UX, *Respondents and Cross-Appellants,*
*v.* BAYLESS ET AL, *Appellants.*
536 P2d 1242

*William B. Crow,* Portland, argued the cause for appellants. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener and Roy F. Gorski, Jr., and Warren C. Deras, Portland.

*Warde H. Erwin,* Portland, argued the cause and filed a brief on cross-appeal for respondents. Also on the briefs were Lawrence W. Erwin and Erwin, Lamb & Erwin, P.C., Portland.

O'CONNELL, C. J.

This is a suit to enjoin the construction of a house, to require removal of completed portions of the house, and to recover damages for the alleged breach of a deed restriction. The trial court entered

a decree requiring defendants[1] either to remove the house (which was completed before trial) or pay plaintiffs $10,000. Defendants appeal.

Plaintiffs own the eastern half and defendants own the western half of Lot 7 of Hessler Hills subdivision in Portland, Oregon. When the subdivision was established in 1948 a Declaration of Restrictions was recorded which subjected each lot in the subdivision to restrictions, including the requirement that

"* * * [e]ach tract or building site as shown on said [previously recorded] plat shall be used and occupied for and by one private residence only * * *."

Subsequently, land within Hessler Hills was sold for residential development. As time passed, many of the original platted lots were divided. In 1964, Mr. and Mrs. James Weed, who then owned all of Lot 7 and occupied the house situated on it, sold the house and eastern portion of the lot and retained the western portion for subsequent residential development. Prior to the sale they obtained the signatures of two-thirds of the owners of lots in Hessler Hills on an "Amendment of Restrictions" which purported to release Lot 7 from the single house restriction. This document was recorded. Plaintiffs purchased the house and the eastern portion of Lot 7 from a successor to the Weeds' vendee in 1968. Plaintiffs and each of their predecessors in interest took the lot with actual knowledge of the Weeds' intended use of the retained western portion of Lot 7 for the construction of a home.

■■ Defendants purchased the western portion of Lot 7 from the Weeds and began construction of a

[1] The named defendants include along with the property owners, Mr. and Mrs. Bayless, the architects, the contractor, and a subcontractor. Because only the property owners are subject to the decree, "defendants" is used to include only Mr. and Mrs. Bayless.

home in 1973. Plaintiffs brought this suit, contending that defendants' house violated the restriction set out above, that it was in violation of setback and minimum lot depth requirements of the City of Portland, and that it violated an easement of record. The trial court found that the setback and depth requirements were subject to a variance granted by the city and that there was no evidence of a violation of the easement. With these conclusions we agree. The trial court also found that the house violated the restriction and must be removed or plaintiffs compensated by the payment of $10,000.

■ Defendants make a number of assignments of error only one of which need concern us here. Defendants correctly contend that the owner of the portion of a lot subject to restriction is not entitled to the benefit of the restriction as to other portions of the same lot. Plaintiffs, as owners of a portion of the same lot as defendants, are not entitled to invoke the restriction against defendants, and the decree therefore cannot stand.

■ In creating the Hessler Hills subdivision, all of the lots were subjected to an equitable restriction in favor of all other lots in the subdivision. Upon a subdivision of one of the lots, the subdivided parts would remain subject to the restriction as to the other lots in the subdivision. Likewise, each of the owners of the subdivided parts of the lot would have the right to enforce the restriction against the owners of the other lots. But, in the absence of a restriction in the deeds by which they acquire their interests, the owners of the subdivided parts of a single lot are not entitled to enforce the restriction against each other. This is explained by the Restatement of Property, § 527, comment c (1944), as follows:

> "* * * The original restriction, while limiting the owner in his use as against those entitled to

enforce it, could in no way limit its use as against himself. He could not as the owner of one part of the restricted area be entitled to enforce the restriction against himself as the owner of another part of it. His grantees may become subject to the original restriction as he was subject to it. They may also become entitled to the benefit of restrictions against other land to the benefit of which he was entitled. But as successors to him they neither become subject to restrictions to which he was not subject nor entitled to the benefit of restrictions to the benefit of which he was not entitled."

The comment goes on to point out that if the owners of the subdivided parts of a lot become entitled to enforce restrictions against each other, which are similar to the pre-existing restrictions, it is because they were newly created upon the subdivision by their common grantor.[2] Such restrictions could be newly created by express provision in the deeds conveying the subdivided parts, or by inference from the circumstances under which the conveyance was made to the grantees of the subdivided parts, or from the circumstances under which the subdivision occurred.

■ In the present case the deeds conveying the west half and the east half of Lot 7 made it clear that the restrictions were not to be enforceable by the grantees. Both deeds contained an express provision that the conveyance was subject to the Declaration of Restrictions *and the Amendment of Restrictions*. Moreover, the circumstances attending the subdivision of Lot 7 gave rise to the clear inference that the restrictions should not be enforceable as between the two subdivided parts since the very purpose of dividing the lot was to permit the construction of a house on the west part of the lot.

■ When the east part of Lot 7 was conveyed to

---

[2] *See,* II American Law of Property § 9.34 (1952).

plaintiffs, they acquired no greater right to enforce the restriction than their grantor. Since this disposes of the case, it is not necessary to discuss the other assignments of error.

The decree of the trial court is reversed.