**Nicholas M. and Patricia ROBERTSON, Petitioners and Appellants,**

v.

**Judith Ann HUTCHISON, Defendant and Respondent.**

No. 14480.

Supreme Court of Utah.

Feb. 9, 1977.

**9.** 73 Am.Jur.2d Statutes, Sec. 257; *State v. Rice*, 110 Ariz. 210, 516 P.2d 1222 (1973); In re Smart, 54 Haw. 250, 505 P.2d 1179 (1973).

Jackson Howard, Howard, Lewis & Peterson, Provo, for petitioners and appellants.

Cullen Y. Christensen, Provo, for defendant and respondent.

CROCKETT, Justice:

Nicholas M. and his wife, Patricia M., Robertson filed a petition for the latter to adopt his two children by his former marriage. The former wife, Judith Ann, now Hutchison, mother of the children, filed objections. Inasmuch as the adoption could not be granted without her consent, or an adjudication that she had abandoned the children,[1] a trial was had on the latter issue. The court refused to find that she had abandoned her children. Petitioners appeal, contending that the evidence compels such a finding.

Petitioner, Nicholas M. and Respondent, Judith, were married June 30, 1965 in Springville, Utah. Two children were born to them, Wendy Jo, in 1966 and Nicholas Ian, in 1968. In the summer of 1970, Judith and the two children left to vacation with her parents in Louisville, Kentucky. She did not return to Utah, but she and the children went to Jeffersonville, Indiana. Nicholas went there, and after some difficulties, brought the children back to his home in September of 1970, but Judith refused to come back. The children have been in their father's home since that time and their mother, Judith, had practically no contact with them until the summer of 1975.

Pursuant to appropriate proceedings petitioner Nicholas was granted a divorce from Judith in April, 1971, in the district court for Utah County. The decree awarded him custody of the two children, and granted Judith visitation rights. Four months later, in August 1971, Nicholas married his present wife, Patricia, who also had one child, Alisha Lynne, by her prior marriage, and another child has been born to them. In July, 1975, they filed this proceeding in which each sought to adopt the other's children by their prior marriages. The petition was granted as to Alisha Lynne, but was denied as to Wendy Jo and Nicholas Ian because of the objection of their mother, Judith, and the trial court's refusal to find that she had abandoned them.

In support of their argument that the court should have found that Judith abandoned her children petitioners urge: that since their marriage their family, now consisting of four children who regard themselves as brothers and sisters, have lived together as a well adjusted, loving family unit; that there has developed mutual love and affection between the subject children and Patricia, whom they know as and look to as their mother; and that they all desire to have the adoption so there will be legal recognition of the relationship which in fact exists. We assume that the court looked upon the foregoing with approval and perhaps with admiration, as do we.

We further observe that due to the lapse of nearly five years in which the respondent appears to have manifest so little interest in her children there seems to

---

1. Sec. 78–30–5, U.C.A.1953.

be a reasonable basis in the evidence upon which the trial court could have found she had abandoned them, had he been so persuaded. But whether there has been an abandonment generally depends upon the facts of each case;[2] and where the evidence is such that reasonable minds might differ thereon, it is a question of fact which it is the prerogative of the fact-trier to determine.[3] In that regard, there is another side of this picture which also deserves thoughtful analysis.

▇▇▇ Arising out of the natural bonds of affection and concern which natural parents usually have for their children, it is and should be the policy of the law to support and give strength to the family by encouraging the preservation of the parent-child relationship and by being reluctant to interfere with or destroy it.[4] Accordingly the court does not easily find such abandonment, but will do so only when the evidence is clear and convincing that the parent has either expressed an intention, or so conducted himself as to clearly indicate an intention, to relinquish parental rights and reject parental responsibilities to his child.[5]

▇▇▇ In reviewing the trial court's finding on that issue these further rules are applicable: that because of the trial court's prerogative as the finder of the facts and his advantaged position with respect to the parties and the witnesses, so that he can better judge their credibility and, in a situation such as this, sense the personalities involved, we assume that he believed those aspects of the evidence which support his

findings and judgment.[6] Moreover, where the petitioner had the burden of proof of an issue on which the trial court refused to find in his favor, this Court on appeal will not upset his ruling and compel such a finding unless the evidence is such that all reasonable minds would necessarily so find.[7]

▇▇▇ Respondent Judith insists that she has never expressed, nor so conducted herself as to indicate, any intent to abandon her children, nor to sever her relationship as their mother. It must be conceded that her lack of attention to them is not to be entirely excused or condoned. However, she makes certain representations as tending to justify what she has done. She says that after Nicholas brought the children back to Utah in September of 1970, she was and has been without financial means to come to visit them or to attempt to obtain their custody; and that this inability was compounded by the fact that a few months later, on March 30, 1971, she was involved in a serious automobile accident in which she suffered multiple injuries including several broken bones; was hospitalized and received extensive and expensive medical treatment; and that what has occurred is due to these circumstances and not to a lack of interest in her children. She further represents that her financial condition improved in June of 1975 when there was a settlement of $50,000 of her claims arising out of the accident; and that it was as soon thereafter as it was practical for her to do so, the following month, July 1975, that she made efforts to reestablish her relationship with her children.

2. *Wilson v. Pierce,* 14 Utah 2d 317, 383 P.2d 925.

3. E. g., see *State in Interest of A,* 30 Utah 2d 131, 514 P.2d 797 (1973), where the trial court *did not find an abandonment* and we affirmed; and see *In re Adoption of Jameson,* 20 Utah 2d 53, 432 P.2d 881 (1967); and *In re Summers,* 560 P.2d 331 (1977), where the trial court *found an abandonment* and we affirmed.

4. See *In re Adoption of Walton,* 123 Utah 380, 259 P.2d 881, and cases cited therein.

5. We say this in awareness that various expressions are used as to the degree of proof, see e.

g. cases cited in footnotes 3 and 4 above. As to what may be regarded as "clear and convincing evidence" and that this is for the trial court to judge, see *Greener v. Greener,* 116 Utah 571, 212 P.2d 194; *Child v. Child,* 8 Utah 2d 261, 332 P.2d 981.

6. See statement in *Nokes v. Continental Min. and Mil.,* 6 Utah 2d 177, 308 P.2d 954.

7. *Howarth v. Ostergaard,* 30 Utah 2d 183, 515 P.2d 442; *First Western Fidelity v. Gibbons and Reed Co.,* 27 Utah 2d 1, 492 P.2d 132.

In weighing the opposing contentions of these parties, there are some practical observations which have a significant bearing on the admittedly perplexing problem here involved. One of these is that the mother is not usually regarded as being charged with the primary responsibility of providing for the material needs of the children, but that this rests with the father. She knew that the children were in a good home with their father. This is quite different from leaving children without concern as to who might take the responsibility for their welfare.

The principle is recognized that the welfare of the children should be the paramount consideration. In this instance they are in the home of Nicholas, who is both their legal and natural father, where they are wanted, loved and well cared for. From the evidence we can say with assurance that there is no reasonable likelihood that this will be changed. The only thing actually involved is the technical, legal status as to Patricia; and the proposed adoption is mostly a matter of the psychological effect because of that status. However desirable petitioners' objective may seem to them, and perhaps to the children, the psychological effect upon the respondent, Judith, as their mother is also worthy of some consideration.

There are other possibilities: that as time goes on and the present state of things continues, Judith may look upon the situation in a more benign way and do her children the favor of agreeing with their wishes and granting her consent to the adoption; and it also is possible that at some future time these children may even find some comfort in the presently expressed attitude of their mother, and the fact that the court did not find that she had abandoned them.

Upon the basis of the various considerations discussed in this case, it appears that the trial court was justified in not being convinced that the petitioners had met their burden of proof that the respondent had abandoned her children. Applying the standard rules of review as hereinabove set forth, we are not persuaded that we should upset the ruling made by him and compel such a finding.

Affirmed. Costs to respondent.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.