**In re J. CHILDREN.**

**No. 18189.**

Supreme Court of Utah.

April 28, 1983.

William G. Shelton, Salt Lake City, for appellant.

Allen M. Swan, J. Douglas Mitchell, Salt Lake City, for respondent.

OAKS, Justice:

Appellant's parental rights were terminated for abandonment. U.C.A., 1953, § 78–3a–48(1)(b). On appeal, she challenges only the sufficiency of evidence for that decision.[1]

Abandonment can only result from inaction or a course of conduct for which the parent is personally responsible.[2] The leading definition of abandonment for purposes of termination of parental rights is the following from *Summers Children v. Wulffenstein,* Utah, 560 P.2d 331, 334 (1977):

> Whether or not there has been an abandonment within the meaning of the statute is to be determined objectively, taking into account not only the verbal expressions of the natural parents but their conduct as parents as well....
>
> ....
>
> [A]bandonment consists of conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship.

Abandonment may also be proved in subjective terms, as where "the parent has either expressed an intention, or so conducted himself as to clearly indicate an intention, to relinquish parental rights and reject parental responsibilities to his child." *McKinstray v. McKinstray,* Utah, 628 P.2d 1286, 1288 (1981) (quoting *Robertson v. Hutchison,* Utah, 560 P.2d 1110, 1112 (1977)).

Whether the question arises in a termination proceeding such as this, or in an adoption proceeding under § 78–30–5, the meaning of "abandonment" and the burden of proof and persuasion are the same. As we said in *McKinstray v. McKinstray, su-*

*pra,* "[B]ecause the law should be reluctant to interfere with or destroy the parent-child relationship, *abandonment will be found 'only when the evidence is clear and convincing ....'"* 628 P.2d at 1288 (quoting *Robertson v. Hutchison,* 560 P.2d at 1112).

Here the facts are essentially undisputed. The three children involved in this proceeding were born in 1971, 1974, and 1976. Appellant and the children's father separated in April 1977, and were divorced on April 30, 1978. The father, who was granted the divorce, was awarded custody of the three children, and appellant was ordered to pay him child support of $15 per month per child. She made no such payments.

When appellant left her husband in April 1977, she took the three children with her. Two days later, she telephoned him and told him to come and get them because she couldn't "stand them" anymore. (Appellant testified that she returned the children because she was unable to find a babysitter to care for them while she was at work. She was then employed in a nursing home.) The father cared for the children and had their exclusive custody from that time until December 1980, over three and one-half years. During that period, appellant visited the children only four or five times (most recently in February 1980), although she was living within a few miles of them in Salt Lake County.

Appellant admitted that she had never paid any child support, but she testified that this was because she had no money to do so. She was on welfare and unemployed or employed only part-time at all times subsequent to her separation. Appellant also testified that she attempted to see the children "quite a few" times during this period, but the father would not permit it because she was not paying the required

---

1. We decline to consider appellant's argument that the juvenile court abused its discretion by failing to appoint a guardian ad litem to represent the children in the termination proceeding, Utah R.Civ.P. 17(b), since no such request was made in the lower court.

2. In terms of personal responsibility, abandonment differs from unfitness, which may result from circumstances over which the parent has no control. *E.g., In re Castillo,* Utah, 632 P.2d 855 (1981).

child support.[3] Her testimony was corroborated as to one telephone request in December 1979, but she was otherwise unable to give any information on the general time or frequency of her attempts to see the children in the period from April 1977 to December 1980. The father testified that she made no attempts from February 1980, when she had the children for a weekend, through December 1980. Appellant remarried in that month. She testified that she requested to see the children at least monthly thereafter, but the father always refused to give his consent.

Aside from some clothing and toys appellant purchased for the children during the two days she cared for them after leaving her husband, she provided no clothing or other gifts to the children from April 1977 through December 1980, when they were placed in foster care. She ignored birthdays and Christmas. She never telephoned them or wrote them letters.

In the fall of 1980, the children's father requested assistance from LDS Social Services in finding a suitable foster home for the children. He testified that he was having great difficulty arranging baby-sitters for them, having to change sitters about once a month, and he "didn't feel that was very good for the upbringing of the children." He said, "I felt they deserved a better life than what they was getting." The children were placed in a foster home in December 1980. Appellant learned of this within a short time, but she took no action—even to pursue her visitation attempts—until August of 1981, when she made her first contact with LDS Social Services.

In order to permit the children to be adopted, the father voluntarily relinquished his parental rights and commenced this proceeding to terminate appellant's parental rights. The termination hearing was held in October 1981. Appellant was represented by counsel. Six witnesses testified: appellant, her new husband, two members of his family, a social worker, and the children's father. On November 30, 1981, the juvenile court filed its decree terminating appellant's parental rights. On December 21, 1981, the district court entered a decree by which the three children were adopted by the foster parents, with whom they had resided for the past year. On December 30, 1981, appellant filed her notice of appeal from the decree of the juvenile court.

The juvenile court applied the test from the *Summers Children* case, quoted earlier: has the parent's conduct evidenced a conscious disregard of the obligations a parent owes to a child, and, if so, has that disregard led to the destruction of the parent-child relationship?[4] The Court concluded that these tests had been "clearly met in this case." Among the court's findings of fact were the following:

4. The natural father has had the physical care, custody and control of said minor children since May, 1978 [should be 1977], during which time the natural mother visited the children only four or five times. Although there was testimony relating to interference with visitation by [the father], [appellant] had access to Legal Aid to enforce visitation. However, her attempts to avail herself of those services were half-hearted, at best
. . . .

5. The natural mother has shown no interest in the welfare of the children. A parent/child relationship does not exist.

6. The natural mother has abandoned said children . . . .

■ Paragraph 4 contains findings of basic facts. Despite appellant's challenge to

3. Appellant apparently had visitation rights under the divorce decree, but although she tried to consult lawyers about enforcing those rights, she said that no papers were ever filed because she could not afford the retainer of one lawyer, and a legal aid lawyer did not follow through with the matter.

4. Two analogous statutes prescribing the period of time necessary to constitute abandonment are inapplicable to the circumstances of this case: U.C.A., 1953, § 78–3a–48(1)(b) (parent having legal custody who surrenders custody; six months); § 78–30–5 (adoption case; failure to support and communicate with child for period of one year).

the sufficiency of evidence under the stringent standard applicable in such matters, we are satisfied that "[t]here was competent evidence adduced which the trial court could have found clear and convincing to support [these] findings . . . ." *McKinstray v. McKinstray,* 628 P.2d at 1289. On questions such as this, where the state of mind accompanying particular conduct is an important consideration, we are especially mindful of the advantaged position of the trial court, which hears the evidence in person and is in the best position to judge the credibility of witnesses and to evaluate the meaning of their testimony. *Robertson v. Hutchison, supra.*

Paragraph 5 is a good example of findings that follow as conclusions from basic facts. Findings of this nature result from an application of the legal rules governing the case to the basic facts and are a mixture of law and fact. In relation to this subject, the "clear and convincing" test concerns both evidentiary support for a finding of fact and the level of persuasion on the reasonableness of a conclusion. *Cf. Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601, 609–12 (1983).

Our scope of review of a "reasonableness" determination such as this was defined in *Hall v. Anderson,* Utah, 562 P.2d 1250, 1251 (1977), quoted with approval in *McKinstray v. McKinstray,* 628 P.2d at 1288, as follows:

[I]f the evidence is such that reasonable minds may differ as to the conclusion to be drawn therefrom, it is the prerogative of the trier of facts to make the determination; and this court should not interfere with that prerogative by disagreeing with the determination thus made.

Applying that standard to these facts, we conclude that the juvenile court's conclusions and findings in paragraph 5 meet the test of reasonableness, even at the "clear and convincing" level of persuasion.

As for paragraph 6, in the context of the facts summarized above, finding 5 fulfills both parts of the definition of abandonment in *Summers Children, supra.* Conscious disregard of the obligations a parent owes to a child is surely shown by the finding that appellant had shown no interest in the welfare of the children during the more than three and one-half years when the father had custody. The second element, destruction of the parent-child relationship, is treated directly. In determining whether these findings and conclusions permitted the ultimate finding and conclusion of abandonment in paragraph 6, it is important to note that this case had no extenuating circumstances such as those that precluded the termination of parental rights in *Robertson v. Hutchison, supra.* This case is, in fact, closely analogous to *In re Guzman,* Utah, 586 P.2d 418 (1978), where a finding and conclusion of abandonment was affirmed.

On the facts and findings in this case, the juvenile court's finding and conclusion of abandonment is amply supported and its decree is affirmed. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.