Argued and submitted July 28, reversed and remanded with instructions
December 15, 1993, respondents' petition for reconsideration filed February 11
allowed by opinion June 8, 1994
See 128 Or App 384 (1994)

Michael and Nora HOHMAN,
husband and wife,
Roger Lauen and Jane McCotter,
*Appellants,*

*v.*

Royce M. BARTEL
and Mary Bartel,
*Respondents.*

(91CV120; CA A77153)

865 P2d 1301

Christopher Keusink argued the cause for appellants. With him on the briefs was Clayton Patrick.

George W. Kelly argued the cause for respondents. With him on the brief was Stephen Eichelberger.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiffs brought this action seeking a declaratory judgment and an injunction to prevent defendants from building a house on defendants' land. Plaintiffs appeal from a judgment that denied their claims for relief. On *de novo* review, ORS 19.125(3), we reverse.

The dispute in this case involves ocean-front property in Brookings. In 1964, Archie and Florence Anderson owned three adjoining lots: Lot 201, the most northerly lot; Lot 204, the middle lot; and Lot 300, the most southerly lot. In February, 1964, the Andersons sold the lots by separate deeds to Roy Cate. Each deed described the premises being conveyed in metes and bounds, and included the following provision:

> "This conveyance is made subject to a special limitation that unless a single family home * * * shall be built * * * within three [two[1]] years of the date of this deed, and unless such single family dwelling shall be completed and habitable within said time, then this deed shall become forfeited and the premises herein described and all rights herein conveyed shall at once revert to and revest in and become the property of [the Andersons].

> "This deed is made upon the condition subsequent that not more than one home and no outbuildings be constructed upon the hereinabove described premises."

In August or September of 1964, Cate sold Lot 201 to Charles and Dorothy Sabin. Thereafter, the Sabins sold the lot to Robert and Edith Fox; then the Foxes sold it to Gordon and Pearlie Miller, and the Millers sold it to plaintiffs Lauen and McCotter. All deeds in the chain of title of Lot 201 contain the 1964 provision quoted above.

In May, 1966, the Andersons and Roy and Tracie Cate entered into separate agreements regarding Lots 204 and 300. Each agreement says:

> "It is the desire of all of the parties hereto to delete the said special limitation [of the 1964 deed] so that there will be no time limitation for the construction of the dwelling referred to therein and no forfeiture in the event of the

---

[1] The deed to Lot 201 required that a house be built within two years. The deeds to Lots 204 and 300 required a house to be built within three years.

failure to construct a dwelling thereon within any particular time.

"* * * * *

"Said Roy E. Cate and Tracie Cate hereby declare the real property in said deed described to be subject to the following covenants and restrictions running with the land [sic] shall bind all parties and persons claiming under them for a period of twenty-five (25) years from the date of these covenants, after which time these covenants shall be automatically extended for successive periods of ten (10) years unless the then adjoining landowners agree by document in writing and recorded [sic] the alteration of said covenants and restrictions, to-wit

"1.  Not more than one home and no outbuildings shall be constructed upon the premises described in the deed referred to."

The deed and agreement referable to each lot do not refer to the other lot.

In January, 1968, Cate sold Lot 204 to Lottie and Preston Paull, subject to the

"conditions and restrictions concerning the construction of a dwelling house, including the terms and provisions thereof, as set forth in deed recorded February 3, 1964 * * * and modified by instrument, including terms and provisions thereof, recorded May 25, 1966."

Sometime before the Paulls applied to the City of Brookings for a minor partition of Lot 204 in May 1980, a house was built on Lot 204. There is no evidence that plaintiffs received notice of the request for the partition. The city granted the partition in July, 1980, thereby creating Lot 200 within the easterly part of Lot 204.

In February, 1981, the Paulls sold Lot 204 to Alvin Bernhard, and in June, 1989, they sold Lot 200 to defendants. Both conveyances made reference to the restrictions contained in the 1964 deed and in the 1966 agreement between the Andersons and the Cates. Also, defendants received a title report that disclosed the same restrictions. In July, 1968, the Cates sold Lot 300 to William and Marie Bowes. Plaintiffs Hohmans purchased Lot 300 from the Bowes in October, 1989. Hohmans' deed is subject to the 1966 agreement between the Andersons and the Cates.

Beginning in July, 1989, defendants wrote letters to Michael Hohman regarding various proposals for an easement across their property for joint utility lines and for a joint sewage system. In those letters, they revealed their plans to build a house. In February, 1990, defendants advised the Millers, who were plaintiffs Lauen and McCotter's predecessors in interest in Lot 201, that they intended to build on Lot 200. In June, 1990, the Millers objected to the proposal. In March, 1991, plaintiffs Lauen and McCotter also objected to defendants' plans to build.

■ Later in 1991, plaintiffs brought this action seeking a declaration that the 1966 agreement relating to Lot 204 prevents defendants from building on Lot 200. They argue that the agreement is enforceable as a restrictive covenant or as an equitable servitude. For a restrictive covenant to have been created by the contracting parties, a transfer of an interest in land that was benefitted by the covenant must have occurred. Because the 1966 agreement between the Andersons and the Cates did not include an exchange of an interest in land, the covenant could not run with the land and bind defendants as successors in interest.[2] *Hall v. Risley and Heikkila,* 188 Or 69, 96-97, 213 P2d 818 (1950).

■ However, an equitable servitude can exist apart from a restrictive covenant. In *Ebbe v. Senior Estates Golf,* 61 Or App 398, 404, 657 P2d 696 (1983), we held:

> "[E]ven if all technical requirements for a covenant to run with the land are not met, the promise is binding as an equitable servitude if (1) the parties intend the promise to be binding; (2) the promise 'concern[s] the land or its use in a direct and not a collateral way'; and (3) 'the subsequent grantee [has] notice of the covenant, either actual or constructive.' " (Citations omitted.)

It is clear from the language of the 1966 agreement that the parties intended that the restriction that only one

---

[2] Plaintiffs also argue that the 1964 deed and the 1966 agreement should be viewed as one transaction and that, therefore, an interest in land was conveyed. We reject that argument. Tracie Cate was not a party to the 1964 transaction, but signed the 1966 agreement. The condition subsequent in the 1964 deed is a personal chose in action enforceable only by the parties to the transaction. *See Wayne v. Wallowa County,* 76 Or 453, 148 P 1140 (1915). The 1966 agreement is a different agreement that contemplates the restriction running with the land.

house be built on Lot 204 would be binding on subsequent parties:

> "[We] hereby declare the real property in said deed described to be subject to the following covenants and restrictions *running with the land* [*sic*] shall bind all parties and persons claiming under them for a period of twenty-five (25) years from the date of these covenants, after which time these covenants shall be automatically extended for successive periods of ten (10) years * * *." (Emphasis supplied.)

The restriction concerns the use of the land in a direct manner. The notice requirement has also been met. Defendants had constructive notice of the restriction because of the references in their title report and deed. Their parcel of land was included in the metes and bounds description of Lot 204 in the 1964 deed. They also knew at the time they bought the land that there was already a house on Lot 204.

■ Defendants argue that even if those elements of an equitable servitude are satisfied, the Andersons and the Cates did not intend that the restriction imposed on Lot 204 be for the benefit of Lots 201 and 300. In order for plaintiffs to enforce the restriction on Lot 200, plaintiffs' lots must be the intended beneficiaries of the agreement. *See Hall v. Risley and Heikkila, supra,* 188 Or at 100. "[T]he intention to benefit a particular parcel of land through the imposition of the restriction on the land conveyed need not be expressly recited in the contract or deed." *Rodgers et ux v. Reimann et ux,* 227 Or 62, 66, 361 P2d 101 (1961). Rather, the parties' intentions

> "may be derived from the language used in the instrument or from the fact that the undertaking is one which because of business practice, custom, or the common understanding of the community is deemed to have been intended to benefit those who succeed to the promisee's land." *Hudspeth v. Eastern Oregon Land Co.,* 247 Or 372, 379, 430 P2d 353 (1967).

We turn to the evidence. First, the restriction says that it is to remain in effect for 25 years and then to be automatically extended for periods of 10 years unless the "then adjoining landowners" consent to an alteration of the restriction. The chain of title to Lot 300 contains the same restriction. Anderson testified:

"Q. [W]hen you made the restrictions, did you intend any kind of benefit for yourself in this or was it just the opinion that [Lot 204] wouldn't support [two houses]?

"A. Well, I was supposed to develop a nice subdivision down here, [south of lot 300], and I didn't want to see any lots down there crowded. Too many.

"* * * * *

"Q. What I want to ask you is, when you said, I only want one house on each lot —

"A. Yes.

"Q. — weren't you protecting the guys on either side, so that they wouldn't be crowded by some yoyo coming in and putting four houses on it?

"A. *Oh, probably natural protection to everybody, on the Beach View Subdivision and everybody.*" (Emphasis supplied.)

Under the circumstances, we hold that the Andersons and the Cates intended that the owners of Lots 201 and 300 benefit from the restriction on Lot 204.

The trial court said that, even if the restriction applies to Lot 200, it would not be violated by the building of a house on the lot, because "it is a restriction to maintain [a] single family [dwelling] only." It reached that conclusion based on the fact that the Andersons platted a subdivision in 1967 immediately south of these lots that contained smaller lots. We are not persuaded by that analysis. Anderson's testimony and the language of the restrictions as to Lots 204 and 300 indicate that the purpose of the restrictions was to prevent more than one house from being built on them. In *Swaggerty v. Petersen*, 280 Or 739, 741, 572 P2d 1309 (1977), the court considered similar restrictive language:

" 'Said lots * * * shall be used exclusively for residential purposes and *not more than one single-family residential structure shall be erected or maintained on any lot.*' " (Emphasis supplied.)

It held that the restriction effectively limited the overall density of the subdivision. 280 Or at 743. We see no material difference in the language of that restriction and the ones in this case.

The trial court also held that, even if the restriction limited the density of houses on the lots, it was rendered unenforceable because the minor partition was a significant change in the character of the property, which negated the benefit of the restriction. The test is whether the restriction is "still of substantial value to [the] dominant estate." *Crawford v. Senosky*, 128 Or 229, 235, 274 P 306 (1929).

> "[A] court of equity will not refuse to enforce * * * restrictions unless the effect of the change upon the restricted area is such as to 'clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant." *Albino v. Pacific First Fed. S & L*, 257 Or 473, 478-79, 479 P2d 760 (1971). (Citation omitted.)

Anderson testified that the purpose of the restrictions was to prevent overcrowding. Plaintiffs testified that they continue to benefit from the restrictions, because they prevent increased noise, traffic and crowding. Based on this evidence, we disagree with the trial court.

██ Defendants assert that the Hohmans have waived or are estopped from objecting to the construction of the house because the partition occurred in 1981 and the Hohmans were aware of defendants' plans to build as early as 1989. Waiver is the "intentional relinquishment of a known right." *Smith v. Martin*, 94 Or 132, 142, 185 P 236 (1919). " 'To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose.' " *Waterway Terminals v. P. S. Lord*, 242 Or 1, 27, 406 P2d 556 (1965) (quoting *McMillan v. Montgomery et al.*, 121 Or 28, 32, 253 P 879 (1927)). The chain of title to Lot 300 does not disclose that the owners of that lot are beneficiaries of a restriction on Lot 204. Michael Hohman testified that, sometime in March, 1989, he told defendants that, when he was considering purchasing Lot 200, a realtor had said that the lot was not "buildable." He also testified that he was not aware of the nature of the restriction until early 1991, shortly before this action was filed. On this conflicting record, we are not persuaded that defendants have carried their burden of showing that the Hohmans intended to waive their right to object to defendants' proposal when they entered into negotiations with defendants about sewage systems and other joint projects.

■     For estoppel to have occurred, there must be evidence that the Hohmans made a false representation to defendants, that the Hohmans knew the true facts, that defendants were ignorant of the truth, that the statement was made with the intent that defendants act on it, and that defendants did act on it. *See Bennett v. City of Salem et al.*, 192 Or 531, 541, 235 P2d 772 (1951); *Clackamas County v. Emmert*, 14 Or App 493, 499, 513 P2d 532, *rev den* (1973). Regarding estoppel of an equitable servitude, *Restatement Property* § 559 (1944) says:

> "The obligations arising out of a promise respecting the use of land are extinguished as against a person entitled to enforce them to the extent necessary to protect from unreasonable harm a person who has acted in *reasonable reliance* upon conduct by the person entitled to enforce the obligations if such person should reasonably have foreseen that his conduct was likely to produce the action taken." (Emphasis supplied.)

For the same reason that no waiver occurred, defendants have not demonstrated estoppel. We are not persuaded by the evidence that, at the time of the negotiations with defendants about joint projects, the Hohmans knew that Lot 204 was subject to a specific restriction against building that inured to their benefit, and represented that they would not enforce it.[3]

■     Also, defendants argue that plaintiffs Lauen and McCotter waived their right to enforce the restriction. The trial court concluded:

> "Plaintiffs McCotter and Lauen were on notice through their predecessors in interest, the Millers, of the intention of the [defendants] to build a home as early * * * as 1990. The Millers were aware of the proposed plan to relocate Beach Avenue to minimize the impact of the Hohman easement on the [defendants'] lot and also of the proposal for a joint sewage disposal line for all four lots. The most reasonable inference from that is that the [defendants] planned to build a home on lot 200. No complaint or notice of any restriction

---

[3] Defendants also rely on the holding in *Erwin v. Bayless*, 272 Or 324, 536 P2d 1242 (1975). That case is inapposite. There, the beneficiary of a similar restriction elected to divide his lot. His successors in interest were subsequently precluded from enforcing the restriction. Here, the trial court correctly dismissed the Bernhards, owners of Lot 204, as party plaintiffs. However, the holding in *Erwin* does not preclude plaintiffs from enforcing the restriction.

was made to the [defendants] by the Millers. Plaintiffs McCotter and Lauen are bound by that knowledge. They did not put the defendants on notice of any objections until March of 1991."

We disagree with the trial court. As we have said, a waiver requires an intentional relinquishment of a known right. On these facts, the Millers' inaction does not demonstrate that they intended to relinquish their right to object. The chain of title to Lot 201 does not disclose Lot 204's restriction. Although the restriction in the 1966 agreement pertaining to Lot 204 was intended to benefit Lot 201, there is not persuasive evidence that the Millers knew that they could enforce a restriction against Lot 204 and chose not to. For that reason, we reject the trial court's reasoning that Lauen and McCotter are bound by Millers' purported waiver. We conclude that the 1966 agreement imposes an equitable servitude on Lot 200.

■      Finally, defendants argue that, under *Tauscher v. Andruss*, 240 Or 304, 401 P2d 40 (1965), an injunction should not be imposed because of the relative hardship that would result to defendants compared to that suffered by plaintiffs if the injunction were not issued. According to defendants,

"[i]f Defendants cannot build on their lot, it will have little or no value to them (it is likely it cannot even be resold), and they will have wasted in excess of $40,000."

In *Seagrove Owners Assn. v. Smith*, 114 Or App 45, 834 P2d 469 (1992), we rejected a similar argument, because the defendants' harm resulted from their decision to proceed in a knowing violation of a restriction. Here, defendants' title report made reference to the restriction. Nonetheless, they proceeded to purchase the property. Having done so, they assumed the risk that the restriction would be enforced. Equity does not require that they be relieved of that risk in the light of the resultant hardship. To hold otherwise would emasculate the integrity of restrictions of record. We hold that plaintiffs are entitled to the injunctive relief that they have requested.

Reversed and remanded for entry of judgment not inconsistent with this opinion.