Argued and submitted December 17, 1979,
reversed and remanded February 11, 1980

# CREDITHRIFT OF AMERICA, INC.,
## *Appellant,*
### *v.*
# NOVAK,
## *Respondent.*

# (No. CI 79-11339, CA 15208)

605 P2d 1380

Daniel J. Gatti, Salem, argued the cause for appellant. With him on the brief was Gatti & Gatti, P. C., Salem.

Clifford G. Collard, Toledo, argued the cause and submitted the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Plaintiff Credithrift appeals from an order of the district court granting summary judgment for the defendant. Credithrift sued the defendant for the balance due on an installment contract assigned to it by Cycle Sport Yamaha for the purchase of a motorcycle. Defendant moved for summary judgment on the ground that the plaintiff repossessed the motorcycle and, pursuant to ORS 83.830(1), could not now sue for any amounts owed. The court found that there was no genuine issue as to any material fact, that the plaintiff had voluntarily accepted surrender of the motorcycle and was now barred from suing on the contract for the balance due. We reverse.

ORS 83.830(1) provides that:

"(1)   Notwithstanding any other provision of law:

"(a)   If the buyer defaults in the performance of a retail installment contract or retail charge agreement subject to ORS 83.010 to 83.190 or 83.510 to 83.680 which is for the sale of consumer goods or motor vehicles, and if the seller repossesses or voluntarily accepts surrender of the goods or motor vehicles, and if at the time of default the unpaid time balance or time sale price is less than $1,250, the buyer shall not be personally liable to the seller for any deficiency between the amount of his unpaid obligation and the amount realized by the seller on resale or other disposition of the goods or motor vehicles. However, the buyer is liable in damages to the seller for any repossessed or surrendered goods or motor vehicles that have been wrongfully damaged.

"(b)   If the unpaid time balance or time sale price at the time of default is $1,250 or more, the seller may recover from the buyer any deficiency that results from deducting the fair market value of the goods or motor vehicles from the unpaid time balance or time sale price. However, the action by the seller against the buyer for the recovery of the deficiency must be commenced not later than 90 days after the date on which the seller repossessed or voluntarily accepted surrender of the goods or motor vehicles.

"(c) If the seller brings an action and obtains judgment against the buyer for the unpaid time balance or time sale price without having first repossessed or voluntarily accepted surrender of the goods or motor vehicles, and if under the provisions of paragraph (a) of this subsection the seller would not be entitled to a deficiency judgment, the seller may not repossess the goods or motor vehicles after obtaining judgment for the unpaid time balance or time sale price."

The statute is clear. In the event of default, where the balance due on a retail installment contract is less than $1,250, the seller or creditor may either sue for the amount owed or reacquire the goods by repossession or voluntary acceptance of their surrender. The seller or creditor cannot do both.

The unpaid balance at the time of default in this case was $1,076.15. The plaintiff does not dispute the fact that its remedy was limited to either suing on the contract or taking the motorcycle back. It contends, however, that it neither repossessed the motorcycle nor accepted its surrender.

In his supporting affidavit submitted with his motion for summary judgment, defendant states that, on January 31, 1979, he stopped making payments on the retail installment contract and that, on February 15, 1979, while the motorcycle was on his property, it was repossessed by the plaintiff or someone under its direction and taken to Newport. Defendant states that it has not been in his possession since.

Submitted with the affidavit was a letter, dated February 22, 1979, from Mr. Sather, manager of Credithrift, to the defendant. It stated that Credithrift had inspected the motorcycle and, due to its "malicious destruction," refused to accept it as a repossession. Credithrift demanded payment of the amount due on the contract. The defendant was told that the motorcycle would be delivered to him as soon as possible or that he could pick it up.

[486]

The plaintiff did not file any counteraffidavits or other materials but it did present Sather's testimony in open court.[1] It further relied on its pleadings and contended that the Sather letter itself raised an issue of fact.

Sather testified that, in September, 1978, the defendant called Credithrift and asked them to repossess the motorcycle. Credithrift responded that they did not have the manpower to repossess but would consider taking the property back if the defendant would bring the motorcycle to their place of business. After the defendant stopped making payments, Sather testified that he went to Newport to find the defendant's residence and inspect the motorcycle. He stopped at a business known as Newport Yamaha to discuss the location of the defendant's home with the owner. Since Mr. Cramer, the owner of Newport Yamaha, knew the area, he offered to pick the motorcycle up for Sather. Sather testified that he called the defendant, who agreed to this arrangement, stating that he wanted to send the motorcycle back and not have to continue payments. After picking up the motorcycle , Mr. Cramer called Sather to inform him about the motorcycle's condition. He told Sather that it was now worth less than $200. Sather testified that, on that basis, he decided to reject the defendant's offer to surrender and sent him a letter informing him of this decision.

Plaintiff claims that it took the motorcycle only to inspect it. Defendant contends that, by removing the motorcycle from his property, Credithrift either repossessed it or voluntarily accepted its surrender. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

---

[1] This procedure was used without objection. It was not provided for in the summary judgment statute—former ORS 18.105—and we do not here approve of it. The taking of live testimony may tend to encourage the trial judge to weigh the evidence he hears. This he should not do. Confining summary judgment procedures to written material minimizes any tendency to weigh the evidence.

Former ORS 18.105(3) (now Rule 47, Oregon Rules of Civil Procedure). In this case, not all of the facts are undisputed. Viewing the record in the light most favorable to the plaintiff, as we must do on this motion for summary judgment, we cannot say that, as a matter of law, the plaintiff accepted surrender of the motorcycle. The letter itself raises the possibility that Credithrift took the motorcycle only to inspect it. Neither can we say that, as a matter of law, the plaintiff repossessed the motorcycle. Sather's testimony and the letter claim otherwise. There is an unresolved material issue of fact. Summary judgment was not appropriate.

It may be that, in entering summary judgment as it did, the trial court resolved the conflicts in the evidence because it had an opportunity to hear Sather testify. We cannot say. All we can say is that such action would not be appropriate in the context of an application for summary judgment.

Reversed and remanded.