Argued and submitted November 23, 1981,
reversed and remanded May 26, 1982

KLIMEK et al,
*Respondents,*
*v.*
The CONTINENTAL INSURANCE COMPANY,
*Appellant.*

(No. 79-3861-L-2)

BURDETT et al,
*Appellants,*
*v.*
KLIMEK et al,
*Respondents.*

(No. 80-1155-J-1, CA A20762)

(Cases Consolidated)

645 P2d 553

Donald H. Coulter, Grants Pass, argued the cause for appellants. With him on the briefs was Myrick, Coulter, Seagraves & Myrick, Grants Pass, and Lombard & King, Ashland.

John W. Eads, Jr., Medford, argued the cause for respondents. With him on the brief were David L. Moore, and Frohnmayer, Deatherage, deSchweinitz & Eads, Medford.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Roberts, Judge Pro Tempore.

JOSEPH, C. J.

## JOSEPH, C. J.

These are appeals from judgments in favor of the sellers in a purchasers' action to rescind a timber sales contract and an action on the purchasers' performance bond.[1] Plaintiffs (the purchasers) sued for rescission in three counts: (1) fraudulent misrepresentation, (2) mutual mistake of fact and (3) acceptance of the sellers' offer to rescind. The trial court granted a partial summary judgment in favor of defendants with respect to the first two counts and, after trying the third count in equity, found for defendants. It then granted defendants' motion for summary judgment on their counterclaim for the balance of the price. By reason of these decisions, Continental Insurance Company, purchasers' surety, was found liable in a separate action on the performance bond.

The means by which the parties chose to resolve the summary judgment motion is somewhat unusual. Defendants' answer put in issue nearly every material allegation of plaintiffs' complaint.[2] Their motion for summary judg-

---

[1] In a separate action the sellers' vendors foreclosed the sellers' interest. All of the actions were consolidated for trial. No appeal was taken from the foreclosure.

[2] Defendants' answer admitted only the description of the property, that defendants were the equitable owners under a purchase agreement with third parties and that the parties entered a written agreement concerning the property. It denied all the other allegations of plaintiffs' complaint.

Plaintiffs alleged, among other things, that:

"As an inducement to plaintiffs to enter into said written [timber sales] agreement, and prior to the execution thereof, the defendants represented to the plaintiffs the following things:

"1. That there was approximately 2 million board feet of presently merchantable timber on [the] property.

"2. That the external boundary lines of the property could be located from flagging which had already been done.

"3. That a sale by plaintiffs would embrace both the land and the timber.

"4. That there was no problem or cost entailed in securing an access way to Parcel I above described, from the Bureau of Land Management, over and across the lands of the government intervening between the public road and such Parcel I.

"IV.

"Each and all of said representations by defendants were false and fraudulent, and were deliberately made by defendants. Defendants knew

ment with respect to the counts of fraudulent misrepresentation and mutual mistake of fact was "on the ground that there is no genuine issue of fact." They appended to the motion a copy of the written agreement and over 100 pages of excerpts of depositions of the parties and the attorneys who negotiated the contract. In response, plaintiffs gave the trial court, one day before the hearing on the matter, all but one of the depositions in their entirety. The last deposition was given to the court the morning of the hearing.

At the conclusion of the parties' oral argument on the matter, the judge proceeded to "state [his] views of the case."

"* * * It is apparent that [defendant Klimek] either personally or through a representative caused an advertisement to be placed and expressed to the prospective purchaser, Mr. Burdett and his associates, that in Mr. Klimek's opinion the land contained approximately two million board feet of timber. It is also clear that when the parties got to negotiating for an actual sale that one of the things the parties specifically negotiated about was

---

such representations were false, as defendants made them recklessly and carelessly not knowing the truth or falsity thereof, but with the intent that plaintiffs should rely upon them, and plaintiffs did rely upon them, all to their damage as hereinafter set forth.

"V.

"In truth and fact, the actual volume of merchantable timber on said real property was less than a million board feet; and in truth and fact, the boundary lines for the tract had been deceptively flagged so that inspection of the property made it appear that there was substantially more timber available than was actually there, the other timber being actually owned by the United States; and in truth and fact, as the sale was finalized, it failed to include the land itself; and in truth and fact, there were problems in securing the said access way from the government, and that substantial costs, in the vicinity of $20,000, were incurred by plaintiffs to secure the way.

"VI.

"Plaintiffs have partially, but not completely, performed the agreement * * *. The falsity of defendants' representations has only recently been discovered by plaintiffs when it became apparent, through logging, that the representations were false."

With respect to the count of mutual mistake, they alleged:

"Each and all of the said representations by defendants were incorrect, but the parties entered into the said agreement under the belief that the representations were correct; and as a result thereof, and by such mistake, the said agreement did not reflect the true understandings on which the agreement was purportedly formed."

whether there was a representation as to the quantity of timber.

"* * * * *

"The written agreement sets out in strong language that, 'The purchasers,' that is Burdett and associates, 'have made a full and complete inspection of the premises * * * and have formed their own conclusions concerning any merchantable timber thereon * * *' and further specifically 'agree that the sellers have not made any express warranties concerning any zoning restrictions or as to the number of acres involved or any condition or status of the subject matter of this agreement, except as expressly stated herein.' So, while there was an expression of an opinion by Mr. Klimek about the amount of timber on the land I believe the parties specifically bargained and agreed that there would be no representation as to the amount of timber on the land. The depositions of the purchasers also pretty clearly revealed that they understood that and agreed to that. *The Court finds that the parties expressly bargained and agreed on the basis that there would be no representations as to the amount of timber. The Court therefore finds there was no inducement by the purchaser to buy based upon representation.*

"Moving to the next phase, even if there was representation made by Klimek or his representatives, and even if there was reliance by the purchasers, Mr. Burdett and his associates, *the Court finds that after having adequate knowledge that there was a misrepresentation or that there was an inadequate amount of timber on the land, the purchasers specifically proceeded with execution of the contract and specifically intended to continue.*

"* * * * *

"So, I find there was not a representation and the reliance on the representation, and even if there was the purchasers failed to disaffirm the contract in a timely way, and I therefore grant the defendant Klimek's motion for partial summary judgment as to count one, as to the count relating to representations.

"* * * * *

"*Count Two, the mutual mistake, the Court finds that even if there was a mutual mistake the purchasers upon hearing of that mutual mistake failed to disaffirm, but in fact proceeded with execution of the agreement to the point of harvesting all the merchantable timber, and thereby virtually completing the contract before communicating a desire to disaffirm.*" (Emphasis supplied.)

The court then tried plaintiffs' third count (which alleged that they had elected to treat a letter written by defendants' attorney claiming plaintiffs had anticipatorily breached the contract as an offer to rescind the contract). On the basis of its earlier rulings on the summary judgment motion, the court limited plaintiffs' proof:

> "[I]f we go through all of this evidence that we would have to go through had there not been a motion for summary judgment it renders the summary judgment proceeding a waste of everybody's time. * * * With some reluctance, Counsel, I'm going to take that position, that I am not going to allow testimony relating to the negotiations, representations and transactions between the parties preceding the entry into the written agreement, any matters before the time relating to this specific letter * * *, so would you please proceed with that in mind."

After hearing the limited evidence, it found for defendants.

■ At plaintiffs' request,[3] the court made written findings of fact and conclusions of law. There he repeated the findings made at the hearing and made additional findings with respect to the fraud and mutual mistake counts.[4] He also stated his findings with respect to the third count.

---

[3] In their brief, plaintiffs say:

> "*Under some conception that it had to render written 'findings of fact' and 'conclusions of law' on the summary judgment issues, the court, nine days later, generated and filed more detailed statements along the same lines.*" (Emphasis supplied.)

However, the record shows that plaintiffs formally requested, presumably pursuant to ORCP 62A, that the trial court make special findings of fact and separately state conclusions of law with respect to the legal or equitable issues determined by the court. That was inappropriate insofar as the summary judgment aspects of the case are concerned.

[4] The court found, for example, that:

"COUNT I, REPRESENTATION II

"The second representation alleged by plaintiffs is that defendants represented that the external boundary lines of the property could be readily located from flagging which was already done.

"The Court finds as a matter of fact that some such representations were made and that the representations were not made falsely and were not made recklessly or carelessly and that the representations made were true. The testimony of the plaintiffs who were on the property was generally that had they gone to the trouble they could have found the correct boundary lines but

■ Plaintiffs argue on appeal that the trial court misperceived its role in determining a summary judgment motion by finding facts. We agree. The function of the court is not to resolve conflicts in the evidence or to find facts but to determine whether there are conflicts and, if not, whether the moving party is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978); *Uihlein v. Albertson's Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Credithrift v. Novak,* 44 Or App 483, 488, 605 P2d 1380 (1980).

■ Here, the trial court, with virtually all the evidence in the case at hand and with defendants claiming that there was no genuine issue of fact and denying nearly every material issue of fact, proceeded to make findings and draw inferences from the evidence. Defendants' deposition excerpts contained their view of what the evidence would show. Those by themselves did not show that there were

---

that they simply made an error in looking over the land as to where the correct boundaries actually were.

"* * * * *

"COUNT I, REPRESENTATION III

"The plaintiffs allege that the sale by plaintiffs was represented to embrace both the land and timber.

"From the depositions of various plaintiffs and the attorney acting for them, Richard Stark, it is clear that because of bonding problems there was a segregation of the sale of land and timber and that the transaction which is the subject of this lawsuit was entered into by plaintiffs knowing that they were by this transaction buying only the timber and that any sale of land would be the subject of a subsequent transaction.

"* * * * *

"COUNT II, REPRESENTATION I

"The Court does find as a matter of fact that there was a mistake by both parties regarding the amount of merchantable timber standing on the property which was the subject of the transaction. The Court finds as a fact that the source of the mistake or cause of the mistake on the part of the plaintiffs was primarily plaintiffs' own negligent failure to properly inspect the land and the timber thereon. The evidence from depositions of the parties was that they could have ascertained the correct boundaries of the land had they bothered to do so and that they could have ascertained the correct volume of timber on the land had they bothered to do so. The Court further finds that after the parties plaintiff knew that they had made a mistake as to the correct land area and the amount of timber contained on the correct land area, that they continued to execute the contract and in fact continued until they had logged all of the merchantable timber contained on the land."

no disputed issues of fact. Although plaintiffs, by merely submitting the depositions in their entirety, failed to "set forth specific facts showing that there is a genuine issue as to any material fact for trial," ORCP 47D, what the trial court did was to evaluate the evidence. That was error, for on a motion for summary judgment it is not the court's role to determine the facts. *Uihlein v. Albertson's, Inc., supra.*

Because the granting of defendant's motion for summary judgment on plaintiff's first two counts was error, the limitation of proof on the third count, the granting of defendants' motion for summary judgment on their counterclaim for the balance of the price and the granting of their summary judgment motion against the surety were also erroneous.

Reversed and remanded.