Argued and submitted July 19, 1982. affirmed January 19, 1983

EBBE,
*Respondent,*
*v.*
SENIOR ESTATES GOLF AND
COUNTRY CLUB,
*Appellant.*

(No. 125,221, CA A23547)

657 P2d 696

Malcolm L. Brand, Salem, argued the cause for appellant. With him on the brief was Rhoten, Rhoten & Speerstra, Salem.

Robert L. Engle, Woodburn, argued the cause for respondent. With him on the brief was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff, owner of a lot in Woodburn Senior Estates, a retirement community, brought this action for declaratory judgment to declare void the attempted creation by defendant of an "initiation fee" to be levied as a lienable assessment against lots on their resale.[1] The matter was submitted to the trial court on pleadings and memoranda. Defendant appeals from a judgment for plaintiff and assigns error to the trial court's determination that the initiation fee was void.[2] We affirm.

Defendant (club) is the nonprofit successor corporation to the original entity that in 1962 developed and assumed management of the retirement subdivision. The club owns and maintains a golf course, which is evidently the only common facility and is usable only by members of

[1] Although plaintiff does not appear to be the owner of a resold lot currently subject to the assessment of the initiation fee, she is an owner of a lot and a member of the Woodburn Senior Estates Golf and Country Club, who apparently brought this declaratory action to challenge the legality of the institution of the fee. The trial court's determination that plaintiff has standing is not challenged on appeal. No one contends that the controversy is not ripe for adjudication.

[2] The trial court's findings and conclusions, in relevant part, are as follows:

"1. The plaintiff has standing to be before this court.

"2. Plaintiff's lot in the Woodburn Senior Estates No.5 is subject to certain restrictive covenants which were duly filed and recorded in Volume 589, Page 378, Marion County Deed Records.

"3. Defendant, Senior Estates Golf and Country Club, the successor in interest to Senior Estates Country Club, is empowered by said restrictive covenants to enforce said restrictions according to their terms and conditions.

"4. The various acts of Senior Estates Golf and Country Club alleged in plaintiff's complaint purporting to establish an 'initiation fee' of $1,000 to be paid by purchasers of re-sale homes within the Senior Estates, which if not paid within one year from the date of sale shall justify a lien upon the lot sold, are acts not authorized or permitted by the terms of the restrictive covenants or otherwise.

"5. That neither the Board of Directors or [sic] the membership of the Senior Estates Golf and Country Club have the power or authority under any of the relevant documents submitted to the court or the law of the State of Oregon to establish an assessment which becomes a lien against plaintiff's lot, other than authorized expenses relating directly to improvements and/or maintenance of that lot as permitted in Article VII of the aforesaid restrictive covenants.

"6. The aforesaid acts of Senior Estates Golf and Country Club membership and/or Board of Directors purporting to create an assessment which could be [sic] become a lien against plaintiff's lot did constitute an illegal attempt to modify and amend the same restrictive covenants and are therefore void."

the club on payment of use fees. Under the terms of a "Declaration of Restrictions" (declaration), filed and recorded in 1964, which is applicable to all lots in the development, all original owners of lots are required to become members of the club. Subsequent owners of lots acquired by resale are not, by virtue of the declaration, required to become members, nor are they assured of membership; they merely become eligible for membership according to the terms of the articles of incorporation and by-laws of the club. The principal eligibility requirement for membership in the club, according to the by-laws, is that owners be at least 50 years old.

The declaration itself contains no mechanism for amending its terms, nor has the declaration ever been amended. The only charges specifically provided for in the declaration are those related to landscaping and upkeep on an owner's lot.[3] The declaration appears to provide, and plaintiff concedes, that the burden to pay such charges is a covenant running with the land that can be enforced by a lien on the property. In May, 1977, the following by-law provision was adopted as Article X, Section 3:

---

[3] Article VII, Sections B, C and D, of the declaration, provide:

"B. The Association shall have the right at all times to enter upon any lot or parcel of said property that is vacant and unplanted or untenanted, by the owner thereof, after reasonable notice to the owner thereof, and at the expense of the Association to plant or replant, trim, cut back, remove, replace, cultivate and/or maintain hedges, trees, shrubs, plants or lawns.

"C. The Association shall have the right at all times, and the owners thereof by accepting a deed or contract thereto, and any tenant or lessee of said owners, by accepting possession thereof, expressly grant to the Association such right and waive any and all objection to the exercise thereof, to enter upon any lot or parcel of said property, whether vacant or occupied, after the reasonable notice to the owner thereof and to that party or parties in possession thereof, and at the expense of the Association to plant or replant, trim, cut back, remove, replace, cultivate and/or maintain hedges, trees, shrubs, plants or lawns and clean, paint, repair, replace and generally maintain the exterior of the residential building and improvements thereon and any other things in connection thereto necessary or desirable in the judgment of the Association to keep said lot or parcel of said property and the residential building and improvements thereon in neat and good order to conform with the general attractive character of the area.

"D. Any and all expenses which may be incurred by the Association in the performance of the acts specified in Sections B. and C. above, shall be a charge against the owner of the lot or parcel of said property upon which such acts were performed in the form of an assessment as provided elsewhere herein and in the By-Laws of the SENIOR ESTATES COUNTRY CLUB."

" 'Assessments' is that charge fixed by the Board of Directors to be paid by each lot or property owner within Woodburn Senior Estates Sections 1 to 7-A, inclusive, as platted, whether or not they play golf or participate in club social functions or other clubhouse activities. This charge is necessary to carry on the business of the corporation and help provide for capital additions, and to help with the maintenance of corporate property, and in consideration of entitlement to share in corporate assets, and for benefits derived and to be derived, directly or indirectly, in increased property values, attractive uniform surroundings, enhancing saleability, and otherwise for the benefits of residing in a controlled retirement community.

" 'Dues' is that charge fixed by the Board of Directors to be paid by those desiring the privilege of playing golf and/or enjoying the privileges of the clubhouse, social functions and other activities of the club.

" 'Fees' is that charge made for use of the facilities, such as greens fees, cart storage fees, etc."

This provision remained substantially the same when the by-laws were amended in December, 1977. In August, 1980, by-law Article I, Section 3 was changed to create the initiation fee and was apparently substituted for Article X, Section 3:

*"Section 3:* ASSESSMENTS, DUES, AND FEES

" 'Initiation fee' is a one-time charge fixed by the Board of Directors to be paid by the purchaser of a resale lot or property within the corporate area controlled by this corporation.

"The Board of Directors may be petitioned in writing, within thirty (30) days after transfer of property title, by the heir(s) or assign(s) of a resale lot or property for exemption from the Initiation Fee charge; provided there was no sale or value received for the resale lot or property.

"A member of the corporation may petition the Board of Directors in writing within thirty (30) days after acquisition of a different resale lot or property for exemption from the Initiation Fee charge; provided that he (she) resides on that lot and disposes of the former property expeditiously.

" 'Assessment' is that annual charge fixed by the Board of Directors to be paid by the owner of each lot within the corporate area controlled by this corporation, whether or not they participate in any Club activity.

" 'Fees' is that charge made for use of the facilities, such as greens fee, cart storage fee, etc."

The initiation fee is apparently to be used for the general purposes of the club. It is not limited to maintenance purposes. If the superseded 1977 by-law provision on assessments can be read to suggest the uses to which the initiation fee would be put, it would include corporate business expenses and capital costs as well as general maintenance of common facilities. Maintenance of individual properties would presumably be supported by the assessments levied specifically for that purpose under the terms of the declaration.

On appeal, the club contends that "the developer intended that the provisions of the Articles and By-Laws were to become affirmative covenants which were to run with the land." The club argues that the controlling language is that contained in the emphasized portions of the declaration:

"NOW THEREFORE, Declarant hereby declares that *the said property* described above *is* and shall be held and conveyed upon and *subject to the provisions of the by-laws of the SENIOR ESTATES COUNTRY CLUB,* and subject to the conditions, covenants, restrictions, easements, reservations, charges and assessments hereinafter set forth.

"* * * * *

"E. *The purchasers of portions of said property by the acceptance of deeds therefor,* whether from Declarant or subsequent owners of said property, or the signing of contracts or agreements to purchase the same, *bind themselves* and their heirs, personal representatives and assigns *to all of the provisions, restrictions, conditions and regulations, now or hereafter, imposed by the By-Laws of said Association, and any amendments thereof* and shall become personally obligated to pay such charges or assessments, including interest and shall thereby become subject to the right and power of Declarant or (after transfer) of the Association to institute proceedings for the collection of such charges, assessments and interest and the enforcement of the liens securing the same. Such rights and powers shall continue in Declarant and (after transfer of the right) in the Association, and such obligations shall run with the land so that the successor owner of record of any portion of said property, and the holder or holders of contracts or

agreements for the purchase thereof, shall in turn become liable for the payment of such charges or assessments together with interest on such as may have become delinquent. (Emphasis supplied.)

Under the club's interpretation of the declaration, the subsequent by-law change in August, 1980, set forth above, made the initiation fee chargeable as a lien against the property.

In *Johnson v. Highway Division*, 27 Or App 581, 584, 556 P2d 724 (1977) (covenant absolving the state of its duty to compensate the owner for removal of the owner's house, should the state need additional right of way for a highway, does not run with the land), we reiterated the requirements, *inter alia*, that a covenant binding upon a promisor's successors in interest must have been so intended by the parties and must "touch and concern" the land of the promisor. 27 Or App at 584. Because of the state of the pleadings, we refused to consider whether the deed in question created any other type of equitable servitude. 27 Or App at 581 n 1. Notice was not an issue in the case. In *Huff v. Duncan*, 263 Or 408, 411 n 2, 502 P2d 584 (1972), the court recognized that an equivalent formulation of the "touch and concern" requirement is whether the promise is one respecting the use of the land of the promisor. *See also* 20 Am Jur 2d Covenants 600, § 30 (1965).[4] In *Huff*, the court stated the requirement that the parties intend that the promisor's successors in title be bound and also noted that, because in that case there was constructive notice of the covenant, the owners of the property were thereby bound. 263 Or at 411, 413.

■    The general rule is that, even if all technical requirements for a covenant to run with the land are not

---

[4] "The primary test whether the covenant runs with the land or is merely personal is whether it concerns the thing granted and the occupation or enjoyment thereof, or is a collateral or a personal covenant not immediately concerning the thing granted. In order that a covenant may run with the land it must have relation to the land or the interest or estate conveyed, and the thing required to be done must be something which touches such land, interest, or estate and the occupation, use, or enjoyment thereof. Whether a particular covenant is sufficiently connected with the use of land to run with the land must be in many cases a question of degree." (Footnotes omitted.)

met, the promise is binding as an equitable servitude if (1) the parties intend the promise to be binding; (2) the promise "concern[s] the land or its use in a direct and not a collateral way"; and (3) "the subsequent grantee [has] notice of the covenant, either actual or constructive." 20 Am Jur 2d Covenants, § 26 (1965). An illustration of this general rule can be found in *Hudspeth v. Eastern Oregon Land Co.*, 247 Or 372, 379, 430 P2d 353 (1967), in which the court rejected the Restatement rule that the benefit of a promise runs with the land only if performance of the promise is a *physical* advantage to the beneficiary in the use of the land, Restatement of Property, Servitudes, § 543, 3254 (1944). The court concluded:

> "It would seem enough for the benefit of a promise to run that the promise relate to land and that the original parties to the promise intended the promise to run with the land." 247 Or at 379.

Notice was not an issue in *Hudspeth.*

Another illustration of the general rule, with specific reference to the notice issue, is furnished by *Fitzstephens v. Watson,* 218 Or 185, 207, 344 P2d 221 (1959), a case in which the court rejected the requirement that there be privity of estate. The court said:

> "If the instrument in the present case is regarded as giving rise to a covenant only, it imposed upon the covenantor an obligation of the type which creates in the land a servitude enforceable in equity. *Murphy v. Kerr,* 5 F2d 908 (8th Cir 1925); *Chrisman v. Southern California Edison Co.,* 83 Cal App 249, 256 P 618 (1927); *Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.,* 40 Colo 467, 92 P 290 (1907); *Atlanta, K. & N. Ry. Co. v. McKinney,* 124 Ga 929, 53 SE 701, 6 LRA (NS) 436, 110 Am St Rep 215 (1906); *Bolles v. Pecos Irrig. Co.,* 23 N M 32, 167 P 280 (1917); *Ball v. Rio Grande Canal Co.,* 256 SW 678 (Tex Civ App 1923); *Noonan v. Orton,* 27 Wis 300 (1870); notes, Minn L Rev 598 (1934) and 15 Tex L Rev (1937). The obligation may be regarded as imbedding itself in the soil of the covenantor imposing its burden upon successive possessors of the land if they have actual' or constructive notice of the covenant. See 5 Restatement, Property, Servitudes, § 539."

Although under *Johnson* we are not required to explore other theories of servitude not raised by the pleadings and briefs to sustain the enforceability of the covenant, it is clear that the requirements that (1) the parties intend that subsequent parties be bound, (2) the covenant relate to the land and (3) there be notice, must be met both at law and in equity. We turn first to the issues of intent and notice.

■     There is authority in Oregon for the proposition that discretionary details of a scheme of restrictions may be left for future determination without invalidating the covenant. *See Hanson v. Salishan Properties, Inc.*, 267 Or 199, 515 P2d 1325 (1973) (approval of building plans on lots subject to review of architectural committee). No party here disputes that the stated assessment for property upkeep and landscaping on the lot affected would be valid despite the failure to specify any amount in the original documents. It has elsewhere been held that an annual assessment by a subdivision owners' association was not rendered unenforceable by lack of specification of the amount or of the due date. *Bond v. Lake o' the Hills*, 381 So2d 1043 (Miss 1980).

■     We conclude that the requirement that the covenant touch and concern the land, *Huff v. Duncan, supra; Johnson v. Highway Division, supra,* is lacking here. A California Court of Appeals has upheld a mandatory membership requirement in a subdivision community as an affirmative covenant that touched and concerned the land. *Anthony v. Brea Glenbrook Club,* 58 Cal App 3d 506, 130 Cal Rptr 32 (1975). In *Anthony,* under the terms of the declaration of restrictions applicable to lot owners in a 525-lot subdivision, all lot owners were required to be members of a nonprofit association and to pay dues and assessments in amounts to be determined by the directors. The court noted that membership in the association could not be severed from ownership of a lot and that an owner could not avoid liability for membership dues to maintain the common facilities, including a clubhouse, swimming pool and the grounds. The court reasoned that maintenance of common grounds and facilities tended to enhance the value of the property by providing recreational opportunities and by making it unnecessary for lot owners to purchase their

own swimming pools.[5] The court concluded that the mandatory membership requirement was a valid and enforceable covenant running with the land. *But see Raintree Corp. v. Rowe,* 38 NC App 664, 248 SE2d 904 (1978) (covenant to pay country club dues is personal, involving payment of a collateral sum of money, despite mandatory club membership, and does not touch and concern land).

Here, there was no mandatory membership requirement for subsequent purchasers, and no right was acquired by their ownership to enjoy the golf course. In the terms of *Anthony,* as to subsequent purchasers, club membership has been severed from property ownership. We cannot say that payment of the initiation fee would enhance or increase the value of plaintiff's lot to a purchaser, who is not required to become a member of the club and who has no right of enjoyment of the golf course until and unless he becomes a member. Because the chief membership eligibility requirement is that the owner of a lot be 50 years of age or older, a young purchaser might not be eligible for membership for a number of years and thus could not use the golf course. *Anthony* is clearly distinguishable, and its rationale is inapplicable here.

Covenants to pay maintenance costs for common property have generally been upheld as satisfying the "touch and concern" requirement. *See, e.g., Anthony v. Brea Glenbrook Club, supra; Bessemer v. Gersten,* 381 So2d 1344 (Fla 1980) (covenant to pay maintenance for common use facilities runs with the land; lien to enforce covenant supersedes homestead exemption); *Lincolnshire Civic Ass'n v. Beach,* 46 A.D.2d 596, 364 NYS2d 248 (1975) (covenant to belong to an association that assesses its members for maintenance of recreation areas runs with the land). Here, it could be inferred that some part of the initiation fee would probably be used for upkeep of the golf course. But, unless and until a lot owner becomes a member of the club, there is in actuality no common property, from all that appears in this record. Nothing in the declaration requires or ensures that the lot owner will become a club member. The "promise" here is in essence a stipulation in the

---

[5] The court took judicial notice of the fact that in southern California there are a "great many swimming pools attached to private residences." 58 Cal App 3d at 511.

by-laws of a nonprofit corporation that purchasers of a resold lot be required to pay a fee to the corporation, a contribution that has no necessary connection to either the purchaser's property or a right to enjoy any common property. We conclude that that promise is not one respecting the use of the land, *i.e.,* one that touches and concerns the land.

The trial court did not err in ruling that the initiation fee cannot be assessed as a lien against the property of a subsequent purchaser of a lot in Woodburn Senior Estates.

Affirmed.