Argued and submitted December 18, 2001, reversed and remanded
September 25, 2002

# SUMMER OAKS LIMITED PARTNERSHIP
and Willamette University,
*Appellants,*

*v.*

Michael E. McGINLEY;
Steven Morrison; Patrick Whitmore;
Eastern Western Corporation,
dba Cheyenne Properties;
Michael Morrison,
dba Morrison Construction;
Morrison Building Corp.;
and Steven Morrison and Patrick Whitmore,
dba Ironwood Investments,
an Oregon general partnership,
*Respondents.*

16-98-20928; A108927

55 P3d 1100

G. David Jewett argued the cause for appellants. With him on the briefs was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

Thomas W. Brown argued the cause for respondents. With him on the brief were Wendy M. Margolis, Robert E. Sabido, and Cosgrave, Vergeer & Kester LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

In this case involving a claim of unjust enrichment stemming from a sale of real property, plaintiffs appeal from a grant of summary judgment in favor of defendants.[1] Plaintiffs argue that the trial court erred in concluding that "system development charge" (SDC) credits awarded to them by the City of Eugene "ran with the land," so that, when plaintiffs sold land to defendants, defendants acquired the right to use those credits to offset any SDCs imposed by the city as a condition to issuance of a building permit.[2] Defendants respond, *inter alia*, by arguing that plaintiffs' argument was not preserved for appeal and, in all events, is founded on the incorrect premise that a contract for the sale of real property does not necessarily also transfer any SDC credits related to that property. We reject defendants' preservation argument and conclude that the trial court erred in concluding that the SDC credits here necessarily ran with the land.[3] Consequently, we reverse and remand.

---

[1] Plaintiffs also alleged claims for breach of contract and fraudulent misrepresentation. The trial court granted defendants summary judgment on those claims, and plaintiffs do not assign error to the dismissal of those claims.

[2] As provided by ORS 223.297 to ORS 223.314, system development charges are reimbursement or improvement fees "collected at the time of increased usage of a capital improvement or issuance of a development permit, building permit, or connection to the capital improvement * * *." ORS 223.299(4)(a). With respect to sewer and water facilities, the amount of the SDC must correspond to "that portion of a sewer or water system connection charge that is greater than the amount necessary to reimburse the governmental unit for its average cost of inspecting and installing connections with water and sewer facilities." *Id.*

[3] Defendants also argue that plaintiffs' argument on appeal relies on matters outside the proper summary judgment record. Defendants, however, are precluded from making that argument pursuant to ORAP 7.15(3). In particular, after plaintiffs filed their opening brief before this court, defendants, relying on *Klimek v. Continental Ins.*, 57 Or App 435, 441-42, 645 P2d 553 (1982) (the mere submission of depositions in their entirety cannot satisfy ORCP 47 D), and *Jeffries v. Mills*, 165 Or App 103, 106, 995 P2d 1180 (2000) (addressing proper scope of summary judgment where trial court did not rule on challenge to affidavits below and it is unclear upon which record the trial court based its ruling), moved to strike plaintiffs' brief on the ground that it relied upon depositions that were outside the proper summary judgment record. Defendants asked that, if we denied their motion to strike, we give them "leave to raise the substantive issues of the motion in their respondents' brief."

We denied defendants' motion without reservation. Nonetheless, in their respondents' brief, defendants renew their argument. Given our earlier unreserved denial of defendants' motion to strike, however, ORAP 7.15 precludes our reconsideration of those arguments regardless of their abstract merit. *See* ORAP 7.15(3) ("If any motion other than a challenge to the court's jurisdiction is denied before

The facts on summary judgment are as follows. Plaintiffs are the developers and former owners of a piece of real property located in the City of Eugene. While plaintiffs still owned the property, including the portion that was subsequently sold to defendants, they privately constructed various public improvements on the undeveloped property, including streets, sidewalks, and sewer and water facilities. Based on those improvements, plaintiffs applied for and received SDC credits from the City of Eugene totaling $361,617.

In 1996, Ironwood Investments (Ironwood) entered into a written contract to purchase the property underlying this dispute, which consisted of roughly a three-acre portion of the complete parcel[4] owned by plaintiffs. By its terms, the agreement was contingent upon, *inter alia*, (1) plaintiffs obtaining approval to partition the lot from a larger parcel owned by plaintiffs; (2) Ironwood entering into an anticipated lease agreement with the state Department of Human Resources; and (3) Ironwood receiving several zoning-related changes to ensure that the property could be used for Ironwood's intended use. The agreement was silent as to SDC credits, and it included an integration clause that stated that the agreement was "the entire agreement and understanding of the parties with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous agreements between them with respect thereto." Thereafter, Ironwood assigned its rights under the contract to Cheyenne Properties (Cheyenne).

In January 1998, the City of Eugene granted defendants' application for a building permit and assessed defendants with $127,025 in SDCs for the proposed improvements. The city, however, offset those charges by $74,779 in SDC credits, $72,858 of which were drawn from the $361,617 in credits granted to plaintiffs.

---

submission of the case, the motion may not be resubmitted without leave of the court in the order on the motion.").

[4] The total development consisted of tax lots 4700, 2200, 4800, 500, and 900. The parcel sold to defendants was a portion of tax lot 900. A map of all tax lots is included at the end of this opinion.

On April 9, 1998, with all of the contingencies to the contract having been satisfied, plaintiffs sold the property to Cheyenne.[5] Shortly thereafter, on April 28, 1998, plaintiffs demanded that defendants reimburse them for $72,858 in credits that the city had used to offset the SDCs. Defendants refused, and this action ensued.

In their operative amended complaint, plaintiffs first asserted that defendants were unjustly enriched in the amount of $72,858 by virtue of receiving the credits as an offset to their total SDC. Plaintiffs further alleged that defendants had orally agreed to reimburse plaintiffs for the amount of any credit used to offset any SDCs assessed by the city. Finally, plaintiffs alleged that defendants had fraudulently misrepresented to plaintiffs that defendants would pay for any SDC credits, thus inducing plaintiffs to enter into the contract.

After discovery, defendants moved for summary judgment. In support of that motion, defendants argued that the written contract constituted an integrated agreement and that, in view of ORS 41.740 (codifying the parol evidence rule) and ORS 41.580 (codifying the statute of frauds), the contract could not be altered by the alleged oral agreement to pay for the SDC credits. Defendants' basic position was that, given the written agreement's silence regarding SDC credits, it followed that the SDC credits passed to defendants along with the subject property.

In opposition to defendants' motion for summary judgment, plaintiffs submitted an affidavit of counsel that attached copies of the complete depositions given by (1) Richard Minkler, plaintiff Summer Oaks' controller; (2) Richard Cone, Summer Oaks' president; (3) Steven Morrison, marketer and developer for Morrison Construction Company; and (4) Ken Allen, project manager for Morrison Construction Company. In addition, plaintiffs submitted a memorandum in opposition to summary judgment. In its memorandum, plaintiffs argued that the excerpted portions

---

[5] It appears from record that defendants obtained the building permit and were awarded the SDC credits by the City of Eugene before the ultimate closing of the parties' land sale transaction. On appeal, however, neither party highlights that fact as being material to whether the SDC credits here run with the land.

of the Minkler, Cone, Morrison, and Allen depositions included with its memorandum demonstrated (1) the existence of material facts regarding whether there was an oral agreement between the parties regarding SDC credits, (2) the terms of that oral agreement, and (3) whether that agreement was breached. Plaintiffs further asserted that defendants' reliance on the statute of frauds and parol evidence rule was misplaced because the SDC credits were not part of the parties' land sale contract:

> "In the present case, there are two contracts. One is for the purchase and conveyance of the subject property, which includes a specific recitation for the defendants to pay all building permit fees. The second oral contract deals with reimbursement to the plaintiffs of any SDC credits utilized by the defendants."

In other words, plaintiff argued that defendants had no right under the written contract to the SDC credits and that the parties' alleged oral agreement obligated defendants to pay for whatever SDC credits they might use.

In response to that memorandum, defendants, *inter alia*, moved to strike the complete, unexcerpted portions of the Minkler, Cone, Morrison, and Allen depositions, asserting that plaintiffs' failure to relate unexcerpted portions of those depositions to material facts in dispute precluded consideration of those materials as part of the summary judgment record. The trial court, however, never reached the merits of that argument. Instead, at oral argument on defendants' summary judgment motion, the court questioned counsel as to whether the transfer of real property, pursuant to the parties' written agreement, necessarily included the entitlement to SDC credits. Plaintiffs argued that the credits were not part of the sale and, thus, that their evidence of an oral agreement was precluded by neither the statute of frauds nor the parol evidence rule:

> "[PLAINTIFFS' COUNSEL]: Your Honor, we must reinforce that the credits are a separate matter from the conveyance of the dirt. That if there had been no credits associated with this property, which could very well have been the factual situation when [defendant] applied, that he wouldn't have received $72,000 less charges."

Plaintiffs further argued, in response to the trial court's assertion that the SDC credits *ran with the land,* that the particular method that plaintiffs chose for recovering the credits suggested that the credits did not run with the land and that the credits were, in fact, not directly related to the land itself:

"[PLAINTIFFS' COUNSEL]: * * * the way that the city sets up the allocation of the credits to the various properties, and they have to eligible properties, is that * * * they utilized one of three alternative methods that the city allows for the use of these credits.

"One is a pro-rata distribution of the credits.

"The second method is the allocation method, which says for this particular property, this amount of credits will be assigned to that particular parcel.

"The third, and chosen method, was the draw-down balance method, which allowed this pot of SDC credits that [the developer] had for putting in Crescent Drive to be utilized on a sort of first come, first serve basis. And that number can't be calculated until the building plans and permits are submitted to the city.

"* * * * *

"So the issue really is sort of specious that this goes with the land, because you can't—number one, there might not have been any credits at the time that Morrison submitted his permit, that's number one."

Defendants, in response, argued that, as owner of the property, they were automatically entitled to the SDC credits that related to the property because "[o]nce we acquire ownership we acquire the credits."

Ultimately, the court agreed with defendants, concluding as a matter of law that the right to SDC credits was one that categorically "flows with the land" because "once you get title, then you have the right to what that land produces." Building on that conclusion, the court noted that the contract was silent as to SDC credits and was an integrated agreement. Thus, the court concluded, plaintiffs could not rely on extrinsic oral evidence to alter the terms of that integrated

writing. Accordingly, the court granted defendants' motion for summary judgment.

The trial court entered judgment in defendants' favor. That judgment, in addition to disposing of plaintiffs' claims, also awarded defendants attorney fees pursuant to a provision in the parties' written contract providing for prevailing party attorney fees in suits to "interpret or enforce any provision of this Agreement or with respect to any dispute relating to this Agreement."

Plaintiffs appeal from the trial court's entry of summary judgment. On appeal, plaintiffs argue that the trial court erred in granting summary judgment as to their unjust enrichment claim. Particularly, plaintiffs focus on one aspect of the trial court's ruling—its conclusion that SDC credits categorically "run with the land"—and argue that the trial court erred in concluding that SDC credits here passed, much like improvements to real property, automatically upon transfer of the real property. In addition, plaintiffs argue that the trial court's award of attorney fees in defendants' favor was error, because their claims were not based on the written contract itself and thus provide no basis for imposing attorney fees under the terms of that contract.

Defendants respond on both procedural and substantive grounds. Procedurally, defendants argue that plaintiffs' focal issue on appeal—whether SDC credits "run with the land"—differs materially from the issues disputed below, namely, whether the parties' written contract was an integrated agreement and whether plaintiffs could use extrinsic evidence to prove a separate oral agreement pertaining to SDC credits. Consequently, defendants argue, the issue of whether the SDC credits run with the land is unpreserved for appeal. On the merits, defendants argue that, on the record before the court, "no reasonable jury could have found that defendants did not pay for the SDC credits as part of the purchase price of the property." Finally, defendants dispute plaintiffs' challenge to the award of attorney fees, which were awarded pursuant to the contract. Defendants argue that the contract was at issue because (1) plaintiffs had attached and incorporated the written contract with their complaint;

(2) plaintiffs had argued that a specific provision in the contract precluded defendants' use of the SDC credits; and (3) in all events, defendants' primary defense below—and the one the trial court adopted—was that the written contract was a complete expression of the parties' intent and the SDC credits passed to defendants under that agreement.

■    We begin by considering defendants' assertion that plaintiffs' "run with the land" argument was not preserved for appeal. In *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), the court summarized the preservation doctrine and explained that, while it is ordinarily essential to raise an issue at trial, it is less important to raise a source for the claimed position and least important to raise a particular argument. *Id*. at 188. Here, the issue of whether the SDC credits ran with the land was preserved. The parties basic dispute was whether the SDC credits, while not mentioned in the parties' written contract, nevertheless passed to defendants as a benefit incidental to the land itself. Plaintiffs' position was that the credits were personal to plaintiffs and thus were not transferred to defendants without an express separate agreement to that effect. Defendants' position was that the credits would pass as part of the parties' written contract unless explicitly excepted and that the contract's silence in that regard necessarily established that defendants obtained the rights to the credits as part of their acquisition of the land. The phrase "run with the land" was interjected into the discussion by the court, and both parties responded directly to the court's inquiries as to whether the credits "ran with the land." Thus, the issue of whether the credits passed to defendants as a necessary incident to their purchase was squarely addressed below, and it would be neither unfair nor contrary to the administration of justice to address plaintiffs' arguments on the merits. *See J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den*, 321 Or 47 (1995) (describing principles of comity, adversarial fairness, and judicial economy underlying preservation doctrine). The issue is preserved.

■    We turn, then, to consider whether the trial court erred in entering summary judgment on plaintiffs' unjust enrichment claim. As we described in *Jaqua v. Nike, Inc.*, 125

Or App 294, 865 P2d 442 (1993), the elements of the quasi-contractual claim of unjust enrichment are "a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Id.* at 298. The parties agree that defendants knowingly received the benefits of the SDC credits, but they dispute the third element and, particularly, whether defendants did purchase those benefits under the original written contract.

Relying on *City of Arvada v. City and County of Denver*, 663 P2d 611 (Colo 1983), and our opinion in *Ebbe v. Senior Estates Golf*, 61 Or App 398, 657 P2d 696 (1983), plaintiffs argue that SDC credits do not "run with the land" but, rather, were personal to plaintiffs so that defendants' receipt of the SDC credits constitutes a benefit for which defendants have not paid. Defendants respond that plaintiffs' implied contractual theory of unjust enrichment fails because it would be improper to imply a contract where, as here, the parties' express contract gave defendants rights in the SDC credits. *See Prestige Homes Real Estate Co. v. Hanson*, 151 Or App 756, 762, 951 P2d 193 (1997) ("ultimately there cannot be a valid legally enforceable contract and an implied contract covering the same services"). Thus, the pivotal issue, as framed by the parties, is whether defendants, by purchasing the real property, received the SDC credits as a necessary incident to that purchase; that is, did the trial court correctly determine that the SDC credits "ran with the land?"

We begin by acknowledging that the resolution to that question, or more specifically how to resolve it in the unique context of this dispute, is not obvious. That, largely, is due to the fact that, legally, the thing underlying this dispute—SDC credits—are "neither fish nor fowl"; they neither relate to the title of the land nor are they neatly categorized as covenants or equitable servitudes that are more typically susceptible to the "run with the land"-type analysis. *See, e.g., Ebbe*, 61 Or App at 404-05 (describing analysis for equitable servitudes and covenants). Nevertheless, we can see no reason why the pivotal principle in this kind of case—that an obligation or benefit will "run with the land" only if it

"touches and concerns" the land itself—is not equally applicable in this context. Thus, we consider whether the SDC credits here "touch and concern" the real property that was the subject of the parties' land sale contract. We conclude that evidence in the summary judgment record does not support the trial court's conclusion that the SDC credits here ran with the land.

■ Oregon courts have held that, for a benefit or a burden to "touch and concern" land, it must somehow respect the use of the land. *Id.* at 404. Stated differently, it must " 'concern the land or its use in a direct and not a collateral way.' " *Id.* at 405 (quoting 20 Am Jur 2d 492, *Covenants*, § 26 (1965)). Here, we cannot conclude that the SDC credits necessarily touch and concern the specific land that was conveyed to defendants. The record shows that a party awarded SDC credits by the City of Eugene can elect, *inter alia*, to (1) apportion those credits to particular parcels (the "allocation" method) or, alternatively, (2) create a general pool of SDC credits that are used on a first-come-first-served basis as the property is developed (the "draw-down balance" method). Thus, while the allocation method effectively guarantees that SDC credits are available for a particular parcel and hence "touch and concern" that and only that parcel, there is no similar guarantee if the draw-down balance approach is selected. Consequently, there is no guarantee that a lot owner under the draw-down balance method will ever receive the benefits of credits obtained by the original developer. The availability of the credits is inchoate, and it is possible that, by the time the owner of a particular parcel seeks a building permit or something else that might give rise to SDCs, there would no longer remain credits to offset those charges.

Here, plaintiffs, as developers, chose the draw-down balance method. Thus, specific credits had not been allocated to the land, and the potential that the credits would still be available for defendants' use was, at best, speculative.

In addition, the record indicates that, while SDC credits were available upon improvement of the land, here the municipal facility improvements that gave rise to those credits are not located on the land at all but instead are adjacent to it. Consequently, the nexus between the SDC credits

and the land that was the subject of the parties' contract is not direct but, rather, arises only as a function of the way the City of Eugene treats SDCs. In that sense, the connection between the two is merely collateral—the SDC credits do not concern the specific parcel at issue here or its use in the direct way that is the *sine qua non* of the "touch and concern" requirement. *Ebbe*, 61 Or App at 405.

Accordingly, we hold that the trial court erred in concluding that SDC credits categorically "ran with the land" as a matter of law. *See City of Arvada*, 663 P2d at 616 (concluding that, in the absence of evidence to the contrary, the SDC credits there were personal and thus did not run with the land). Given that plaintiffs selected the draw-down balance method and that the improvements giving rise to the SDC credits are not on the land itself, the SDC credits here do not touch and concern the land and thus do not run with the land. Under those circumstances, summary judgment against plaintiffs' unjust enrichment claim was unwarranted.

Finally, plaintiffs assign error to the trial court's award of attorney fees in defendants' favor. Given our disposition, and because of the potential for a different outcome on remand, we reverse that award of attorney fees and remand the case to the trial court for further proceedings.[6]

Reversed and remanded.

---

[6] At oral argument, defendants, for the first time, argued that we should uphold the award of attorney fees regardless of our disposition of plaintiffs' appeal. We decline to address the merits of that unpreserved argument.

Morrison Property

Other Summer Oaks Property

TL 2200

LOT 5

TL 1700

LOT 4

TL 1800

LOT 3

TL 0500

LOT 2

rg Road

TL 0900

LOT 1

Shadowview D'

Chad Drive